S07A1481. HUMPHREY v. WILSON.
S07A1606. WILSON v. THE STATE.
(652 SE2d 501)

SEARS, Chief Justice.

In Case No. S07A1481, the appellant, Warden Carl Humphrey, appeals from the grant of habeas corpus relief to the appellee, Genarlow Wilson, by the Superior Court of Monroe County (hereinafter referred to as the "habeas court"). For the reasons that follow, we conclude that the habeas court properly ruled that Wilson's sentence of ten years in prison for having consensual oral sex with a fifteen-year-old girl when he was only seventeen years old constitutes cruel and unusual punishment, but erred in convicting and sentencing Wilson for a misdemeanor crime that did not exist when the conduct in question occurred. Because the minimum punishment for the crime for which Wilson was convicted constitutes cruel and unusual punishment, this case must be remanded to the habeas court for it to enter an order reversing Wilson's conviction and sentence and discharging him from custody. Accordingly, in Case No. S07A1481, we affirm the habeas court's judgment in part and reverse it in part.

In Case No. S07A1606, Wilson appeals the denial, by the Superior Court of Douglas County (hereinafter referred to as the "trial court"), of his motion for release on bail during the pendency of the warden's appeal in Case No. S07A1481. Because the trial court properly denied Wilson's motion for bail, we affirm the trial court's judgment.

**Facts:**

In February 2005, Wilson was found guilty in Douglas County for the aggravated child molestation of T. C. Wilson was 17 years old at the time of the crime, and the victim was 15 years old. The sexual act

involved the victim willingly performing oral sex on Wilson.[1] At the time of Wilson's trial, the minimum sentence for a conviction of aggravated child molestation was ten years in prison with no possibility of probation or parole; the maximum sentence was thirty years in prison.[2] The trial court sentenced Wilson to eleven years, ten to serve and one year on probation. In addition to the foregoing punishment, Wilson was also subject to registration as a sex offender. In this regard, under OCGA § 42-1-12, Wilson would be required, before his release from prison, to provide prison officials with, among other things, his new address, his fingerprints, his social security number, his date of birth, and his photograph.[3] Prison officials would have to forward this information to the sheriff of Wilson's intended county of residence,[4] and Wilson, within 72 hours of his release, would have to register with that sheriff,[5] and he would be required to update the information each year for the rest of his life.[6] Moreover, upon Wilson's release from prison, information regarding Wilson's residence, his photograph, and his offense would be posted in numerous public places in the county in which he lives and on the internet.[7] Significantly, Wilson could not live or work within 1,000 feet of any child care facility, church, or area where minors congregate.[8]

After the trial court denied Wilson's motion for new trial, Wilson filed a notice of appeal to this Court. This Court transferred the appeal to the Court of Appeals, and that Court affirmed Wilson's conviction on April 28, 2006.[9] On appeal, Wilson claimed that his trial counsel was ineffective for failing to contend that OCGA § 16-6-4 violated equal protection by imposing a minimum sentence of ten years in prison on a seventeen-year-old male who engages in oral sex with a female under the age of sixteen when a seventeen-year-old

---

[1] OCGA § 16-6-4 (c) provides that "[a] person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." In Georgia, "[a] person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1).

[2] See former OCGA § 16-6-4 (d) (1), Ga. L. 1997, p. 1578, § 1 (a person convicted of aggravated child molestation must "be punished by imprisonment for not less than ten nor more than 30 years" and is subject to the sentencing provisions of OCGA § 17-10-6.1, which, at that time, provided that a person convicted of aggravated child molestation or other serious violent felony had to serve a minimum of ten years in prison and could not receive probation or parole, see former OCGA § 17-10-6.1 (b), Ga. L. 1998, p. 180, § 2).

[3] OCGA § 42-1-12 (a) (16), (b), (f) (1).

[4] OCGA § 42-1-12 (d) (1).

[5] OCGA § 42-1-12 (f) (2).

[6] OCGA § 42-1-12 (f) (7).

[7] See OCGA § 42-1-12 (i).

[8] OCGA § 42-1-15.

[9] *Wilson v. State*, 279 Ga. App. 459 (631 SE2d 391) (2006).

male who engages in intercourse with the same female is guilty of only misdemeanor statutory rape under OCGA § 16-6-3 (b). Wilson also contended that his sentence constituted cruel and unusual punishment. In addressing Wilson's equal protection claim, the Court of Appeals stated that Wilson's equal protection challenge was effectively resolved against him in *Odett v. State*,[10] and that, in any event, this Court's transfer order meant that "Wilson's constitutional challenge is untimely and thus waived."[11] The Court of Appeals did not address Wilson's contention that his sentence constituted cruel and unusual punishment. In a motion for reconsideration filed on May 8, 2006, Wilson stated that, two days before the Court of Appeals issued its opinion, Georgia Governor Sonny Perdue signed House Bill 1059, which amended OCGA § 16-6-4 effective July 1, 2006, by adding a new subsection (d) (2) to make conduct such as Wilson's a misdemeanor and which amended OCGA § 42-1-12 to relieve him from having to register as a sex offender. Wilson contended that this new law should lead to a different outcome on his equal protection and ineffective assistance of counsel claims. The Court of Appeals denied Wilson's motion for reconsideration. Wilson thereafter petitioned this Court for certiorari, contending that this Court should review his equal protection claim. Wilson did not pursue his cruel and unusual punishment claim on certiorari. This Court subsequently denied Wilson's petition for certiorari.

On April 16, 2007, Wilson filed the present application for writ of habeas corpus, contending that his sentence constituted cruel and unusual punishment due in large part to the fact that the 2006 Amendment to OCGA § 16-6-4 makes conduct such as his a misdemeanor, while the 2006 Amendment to OCGA § 42-1-12 relieved him from the requirements of the sex offender registry. In this regard, the 2006 Amendment to OCGA § 16-6-4 provides that, if a person engages in sodomy with a victim who "is at least 13 but less than 16 years of age" and, if the person who engages in the conduct is "18 years of age or younger and is no more than four years older than the victim," the person is guilty of the new crime of misdemeanor aggravated child molestation.[12] Moreover, the 2006 Amendment to OCGA § 42-1-12 provided that teenagers whose conduct is a misdemeanor under the 2006 Amendment to OCGA § 16-6-4 do not have to register as sex offenders.[13]

---

[10] 273 Ga. 353 (541 SE2d 29) (2005).

[11] *Wilson*, 279 Ga. App. at 461.

[12] See OCGA § 16-6-4 (d) (2), as amended by Ga. L. 2006, p. 379, § 11.

[13] OCGA § 42-1-12, as amended by Ga. L. 2006, p. 379, § 24.

On June 11, 2007, the habeas court ruled that Wilson's claim of cruel and unusual punishment was not procedurally barred, reasoning that since "the aggravated child molestation statute was not amended until after [Wilson's] direct appeal was filed, [Wilson] could not have reasonably argued that the amended statute resulted in a constitutional violation of his right to be free from cruel and unusual punishment." Concluding that the extraordinary changes in the law reflected in the 2006 Amendments to OCGA §§ 16-6-4 and 42-1-12 reflected this State's contemporary view of how Wilson's conduct should be punished, the habeas court ruled that Wilson's punishment was cruel and unusual. Finally, the habeas court, as a remedy, ruled that Wilson was guilty of misdemeanor aggravated child molestation under the 2006 Amendment to OCGA § 16-6-4, and it sentenced Wilson to 12 months to serve with credit for time served. On June 11, 2007, the warden filed a notice of appeal from the habeas court's grant of relief to Wilson.

That same day, pursuant to OCGA § 9-14-52 (c), Wilson filed a motion to be released on bond pending the warden's appeal. As required by OCGA § 9-14-52 (c), Wilson filed the motion for bond in the trial court. On June 27, 2007, the trial court denied Wilson's motion for bond on the ground that OCGA § 17-6-1 (g) precludes the grant of an "appeal bond" when a person has been convicted of aggravated child molestation. Wilson appealed the denial of his motion. This Court subsequently expedited both the warden's appeal from the habeas court's grant of relief to Wilson and Wilson's appeal from the denial of his motion for bond pending the warden's appeal.

1. We first address Wilson's appeal from the denial of his motion for bond in Case No. S07A1606.

The State has moved to dismiss Wilson's appeal based on *Bailey v. State*,[14] contending that Wilson's appeal is interlocutory and thus subject to dismissal since Wilson did not follow the interlocutory appeal provisions of OCGA § 5-6-34 (b). It is difficult from the facts set forth in the *Bailey* opinion to determine why this Court labeled Bailey's " 'motion for supersedeas bond pending post-conviction relief' " as interlocutory. However, it is clear from the record in the present case that the denial of Wilson's request for bail pursuant to OCGA § 9-14-52 (c) is a final judgment. Moreover, we have permitted direct appeals from final judgments in cases involving appeal bonds.[15] Accordingly, we conclude that Wilson has the right to directly appeal the denial of his motion for bail pending the warden's appeal, and we

[14] 259 Ga. 340 (380 SE2d 264) (1989).
[15] E.g., *Browning v. State*, 254 Ga. 478 (330 SE2d 879) (1985).

deny the State's motion to dismiss. To the extent that *Bailey* is contrary to our holding, it is overruled.

OCGA § 9-14-52 (c), in plain language, provides that a habeas petitioner may seek bail during the warden's appeal "as is provided in criminal cases." The phrase "as is provided in criminal cases" is broad enough to evidence the General Assembly's intent that the petitioner's right to bail will depend on any bail provisions that the General Assembly has enacted or will enact to govern criminal cases. In this regard, the General Assembly has enacted OCGA § 17-6-1 (g) to govern bail in criminal appeals, and as it prohibits bail on appeal for persons convicted of aggravated child molestation, Wilson is not entitled to bail pending the warden's appeal.

Accordingly, we affirm the trial court's judgment in Case No. S07A1606.

2. We turn now to the warden's appeal of the grant of habeas relief to Wilson. The warden first contends that Wilson is procedurally barred from raising his cruel and unusual punishment claim because, according to the warden, Wilson could have raised the claim in his motion for reconsideration in the Court of Appeals but did not do so. We conclude that Wilson is not procedurally barred from raising his claim.

Under OCGA § 9-14-48 (d), a habeas petitioner is procedurally barred from raising a claim if he failed to comply with "Georgia procedural rules at trial and on appeal." Because, as the warden recognizes, the basis of Wilson's claim did not become available until the time for filing the motion for reconsideration in the Court of Appeals,[16] and because an appellant "may neither extend the facts of his case nor enlarge upon his cause of action" in a motion for reconsideration in an appellate court,[17] Wilson did not fail to comply with any Georgia procedural rules on appeal in not claiming that his sentence constituted cruel and unusual punishment based on the 2006 Amendment to OCGA § 16-6-4. Accordingly, Wilson is not procedurally barred from raising this claim.

3. The warden next contends that the habeas court erred in ruling that Wilson's sentence constituted cruel and unusual punishment. We disagree.

(a) Under the Eighth Amendment to the United States Constitution and under Art. I, Sec. I, Par. XVII of the Georgia Constitution, a sentence is cruel and unusual if it " ' "is grossly out of proportion to

---

[16] See *Fleming v. Zant,* 259 Ga. 687 (386 SE2d 339) (1989) (cruel and unusual punishment claim based on newly amended statute could not reasonably have been raised in petitioner's prior habeas petitions as ground for claim did not exist until statute was amended and petitioner was thus not procedurally barred from raising claim).

[17] *Berman v. Rubin,* 138 Ga. App. 849, 855 (227 SE2d 802) (1976).

the severity of the crime." ' "[18] Moreover, whether "a particular punishment is cruel and unusual is not a static concept, but instead changes in recognition of the ' "evolving standards of decency that mark the progress of a maturing society." ' ' "[19] Legislative enactments are the clearest and best evidence of a society's evolving standard of decency and of how contemporary society views a particular punishment.[20]

In determining whether a sentence set by the legislature is cruel and unusual, this Court has cited with approval[21] Justice Kennedy's concurrence in *Harmelin v. Michigan*.[22] Under Justice Kennedy's concurrence in *Harmelin*, as further developed in *Ewing v. California*,[23] in order to determine if a sentence is grossly disproportionate, a court must first examine the "gravity of the offense compared to the harshness of the penalty" and determine whether a threshold inference of gross disproportionality is raised.[24] In making this determination, courts must bear in mind the primacy of the legislature in setting punishment and seek to determine whether the sentence furthers a "legitimate penological goal" considering the offense and the offender in question.[25] If a sentence does not further a legitimate penological goal, it does not "reflect[ ] a rational legislative judgment, entitled to deference," and a threshold showing of disproportionality has been made.[26] If this threshold analysis reveals an inference of gross disproportionality, a court must proceed to the second step and determine whether the initial judgment of disproportionality is confirmed by a comparison of the defendant's sentence to sentences imposed for other crimes within the jurisdiction and for the same crime in other jurisdictions.[27]

---

[18] *Fleming*, 259 Ga. at 689 (citations omitted). Accord *Johnson v. State*, 276 Ga. 57, 62 (573 SE2d 362) (2002); *Wyatt v. State*, 259 Ga. 208, 209 (378 SE2d 690) (1989); *Coker v. Georgia*, 433 U. S. 584 (97 SC 2861, 53 LE2d 982) (1977).

[19] *Fleming*, 259 Ga. at 689, quoting *Penry v. Lynaugh*, 492 U. S. 302, 330-331 (109 SC 2934, 106 LE2d 256) (1989), which in turn was quoting *Trop v. Dulles*, 356 U. S. 86, 101 (78 SC 590, 2 LE2d 630) (1958). Accord *Johnson*, 276 Ga. at 62.

[20] *Johnson*, 276 Ga. at 62; *Dawson v. State*, 274 Ga. 327, 330 (554 SE2d 137) (2001); *Fleming*, 259 Ga. at 689.

[21] *Ortiz v. State*, 266 Ga. 752, 753 (470 SE2d 874) (1996); *Isom v. State*, 261 Ga. 596, 597 (408 SE2d 701) (1991).

[22] 501 U. S. 957, 996-1009 (111 SC 2680, 115 LE2d 836) (1991) (Kennedy, J., concurring).

[23] *Ewing v. California*, 538 U. S. 11, 29-30 (123 SC 1179, 155 LE2d 108) (2003) (O'Connor, J., joined by Rehnquist, C. J., and Kennedy, J. (plurality opinion)).

[24] *Ewing*, 538 U. S. at 28; *Harmelin*, 501 U. S. at 1004-1005.

[25] *Ewing*, 538 U. S. at 29.

[26] Id. at 30. Accord *State v. Berger*, 134 P3d 378, 382 (Ariz. 2006) ("[a] prison sentence is not grossly disproportionate, and a court need not proceed beyond the threshold inquiry, if it arguably furthers the State's penological goals and thus reflects 'a rational legislative judgment, entitled to deference.' ") (citation omitted).

[27] *Harmelin*, 501 U. S. at 1004-1005 (Kennedy, J., concurring).

(b) Before undertaking the foregoing analysis, we address the warden's contention that this Court's recent decision in *Widner v. State*[28] controls the cruel and unusual punishment issue adversely to Wilson. We conclude that *Widner* is not controlling. Widner was eighteen years old when he had oral sex with a willing fourteen-year-old girl, and he received a ten-year sentence under OCGA § 16-6-4. On appeal, we resolved Widner's claim of cruel and unusual punishment against him.[29] However, the basis of Wilson's claim in the present case — the 2006 Amendment to OCGA § 16-6-4 — did not become effective until after Widner's appeal, and Widner thus did not predicate his cruel and unusual punishment contention on the 2006 Amendment for that reason.

There is, however, a more significant reason *Widner* is not controlling in the present case. The 2006 Amendment to OCGA § 16-6-4 did not alter the punishment for Widner's conduct. In *Widner*, the minor child turned fourteen five days before the incident in question. Widner was eighteen and a half years old at that time.[30] Widner was thus more than four years older than the victim. The 2006 Amendment to OCGA § 16-6-4 changed the punishment for oral sex with a thirteen-, fourteen-, or fifteen-year-old child when the defendant is "no more than four years older than the victim." Accordingly, the amendment does not apply to Widner's conduct and does not raise an inference of gross disproportionality with respect to his sentence.[31]

(c) We turn now to the threshold inquiry of disproportionality as developed in *Harmelin* and *Ewing*. In this regard, we conclude that the rationale of our decisions in *Fleming*[32] and *Dawson*[33] leads to the conclusion that, considering the nature of Wilson's offense, his ten-year sentence does not further a legitimate penological goal and thus the threshold inquiry of gross disproportionality falls in Wilson's favor.

In *Fleming*, this Court addressed whether the execution of mentally retarded offenders constituted cruel and unusual punishment. At the time of Fleming's trial, Georgia did not have any

---

[28] 280 Ga. 675 (631 SE2d 675) (2006).

[29] *Widner*, 281 Ga. at 676.

[30] The crime occurred on December 29, 2002. The victim was born on December 24, 1988. Widner was born on June 19, 1984.

[31] See, e.g., *Orr v. State*, 283 Ga. App. 372, 372-373 (641 SE2d 613) (2007) (although the victim was fifteen years old at the time of the offense and the defendant was eighteen years old at that time, the defendant was three years and ten months older than the victim; the defendant therefore was more than three years older than the victim for purposes of OCGA § 16-6-3 (b) and was not entitled to be sentenced for misdemeanor statutory rape).

[32] 259 Ga. 687.

[33] 274 Ga. 327.

prohibition against executing the mentally retarded, but in 1988, the Georgia legislature added such a prohibition to OCGA § 17-7-131. Although this Court rejected Fleming's claim that the new statute should be applied retroactively to him,[34] we ruled in Fleming's favor on his claim that executing him would amount to cruel and unusual punishment.[35] Recognizing that recent legislative enactments constitute the most objective evidence of a society's evolving standards of decency and of how a society views a particular punishment, this Court held that this State's recent legislative enactment prohibiting the execution of the mentally retarded "reflect[ed] a decision by the people of Georgia that the execution of mentally retarded offenders makes no measurable contribution to acceptable goals of punishment."[36] We thus concluded that Fleming's punishment was cruel and unusual.

In *Dawson*, we relied on the principles of *Fleming* to hold that death by electrocution was cruel and unusual. In 2000, our General Assembly amended OCGA § 17-10-38 to provide that lethal injection would replace electrocution as this State's method of execution.[37] We noted that this amendment constituted a significant change in the law[38] and that it represented a shifting societal consensus on electrocution and constituted clear and objective evidence that our contemporary society condemned this method of punishment.[39] We thus concluded that death by electrocution "makes no measurable contribution to accepted goals of punishment" and constituted cruel and unusual punishment.[40]

Here, the legislature has recently amended OCGA § 16-6-4 to substitute misdemeanor punishment for Wilson's conduct in place of the felony punishment of a minimum of ten years in prison (with the maximum being 30 years in prison) with no possibility of probation or

---

[34] *Fleming*, 259 Ga. at 688.

[35] See id. at 687-688. The dissent disingenuously attempts to distinguish between the legislature's statement of legislative intent regarding retroactivity in *Fleming* and the legislature's statement in the present case, see Section 30 (c) of Ga. L. 2006, pp. 379, 413. In *Fleming*, the legislature stated that it wanted the amendment precluding the execution of mentally retarded defendants to apply only to those defendants convicted on or after July 1, 1988. Clearly, the same legislative intent is expressed in Section 30 (c) of Ga. L. 2006 at p. 413. Putting the *Fleming* statement of legislative intent in the context of the present case, the legislature in amending OCGA § 17-7-131 to preclude the execution of the mentally retarded was stating that the 1988 amendment would not "affect or abate," Section 30 (c) of Ga. L. 2006 at p. 413, the sentence for "any . . . act or omission which occurred prior to the effective date of the [amendment] repealing, repealing and reenacting, or amending such law." Id.

[36] *Fleming*, 259 Ga. at 690.

[37] See Ga. L. 2000, p. 947, § 1.

[38] *Dawson*, 274 Ga. at 330.

[39] Id. at 330, 335.

[40] Id. at 335.

parole. Moreover, the legislature has relieved such teenage offenders from registering as a sex offender. It is beyond dispute that these changes represent a seismic shift in the legislature's view of the gravity of oral sex between two willing teenage participants. Acknowledging, as we must under *Fleming*, that no one has a better sense of the evolving standards of decency in this State than our elected representatives, we conclude that the amendments to OCGA §§ 16-6-4 and 42-1-12 reflect a decision by the people of this State that the severe felony punishment and sex offender registration imposed on Wilson make no measurable contribution to acceptable goals of punishment.[41]

Stated in the language of *Ewing* and *Harmelin*, our legislature compared the gravity of the offense of teenagers who engage in oral sex but are within four years of age of each other and determined that a minimum ten-year sentence is grossly disproportionate for that crime. This conclusion appears to be a recognition by our General Assembly that teenagers are engaging in oral sex in large numbers;[42]

---

[41] Although the dissent correctly notes that the General Assembly stated that the 2006 Amendment to OCGA § 16-6-4 should not be applied retroactively, the dissent erroneously concludes that the cruel and unusual punishment analysis ends there. The universal and well-settled rule of statutory construction is that legislative enactments are not intended to operate retroactively unless there is a clear directive that they do so, *Polito v. Holland,* 258 Ga. 54, 55 (365 SE2d 273) (1988), and that persons who commit crimes are to be convicted and sentenced under the laws that existed at the time the crimes were committed, *Fleming v. State,* 271 Ga. 587, 590 (523 SE2d 315) (1999). Section 30 (c) of Ga. L. 2006, pp. 379, 413, on which the dissent relies, is nothing more than a legislative statement regarding standard principles of retroactivity. Under the dissent's analysis, a legislature's statement of intent that a law not be applied retroactively would always preclude a cruel and unusual punishment analysis. The dissent, therefore, would permit the General Assembly to dictate to the court when a punishment may be considered cruel and unusual, thus violating the separation of powers. See *Weems v. United States,* 217 U. S. 349, 378-379 (30 SC 544, 54 LE 793) (1910) (power of the legislature to define crimes and punishment limited by judiciary's power to determine what is cruel and unusual punishment). The dissent's position ignores the holdings of the United States Supreme Court and this Court that the concept of cruel and unusual punishment is an evolving constitutional standard and that the most objective evidence of that evolving standard are legislative enactments. See footnotes 19 and 20, supra. Stated somewhat differently, the dissent equates retroactivity analysis with cruel and unusual punishment analysis; the two, however, must be, and are, analytically distinct. Thus, although this Court cannot apply the 2006 Amendment to OCGA § 16-6-4 retroactively, we can rely on that amendment as a factor representative of the evolving standard regarding the appropriate punishment for oral sex between teenagers. Finally, the dissent's reliance on Presiding Justice Hunstein's concurrence in *Wilson v. State,* 281 Ga. 447 (642 SE2d 1) (2006), is misplaced, as the issue of cruel and unusual punishment was not before the Court at that time.

[42] According to a 2002 study by the Centers for Disease Control and Prevention, 55% of 15- to 19-year-old boys and 54% of 15- to 19-year-old girls have engaged in oral sex, a slightly higher percentage than the boys and girls that have engaged in intercourse. See Sexual Behavior and Selected Health Measures: Men and Women 15-44 Years of Age, United States, 2002, published by the National Center for Health Statistics, a branch of the Centers for Disease Control and Prevention. (http://www.cdc.gov/nchs/products/pubs/pubd/ad/361-370/ad362.htm) These statistics indicate that, under the Georgia definition of aggravated child molestation that existed at the time of Wilson's trial, there are about 7.5 million incidents of aggravated child

that teenagers should not be classified among the worst offenders because they do not have the maturity to appreciate the consequences of irresponsible sexual conduct and are readily subject to peer pressure;[43] and that teenage sexual conduct does not usually involve violence and represents a significantly more benign situation than that of adults preying on children for sex.[44] Similarly, the Model Penal Code adopted a provision de-criminalizing oral or vaginal sex with a person under sixteen years old where that person willingly engaged in the acts with another person who is not more than four years older.[45] The commentary to the Model Penal Code explains that the criminal law should not target "[s]exual experimentation among social contemporaries"; that "[i]t will be rare that the comparably aged actor who obtains the consent of an underage person to sexual conduct . . . will be an experienced exploiter of immaturity"; and that the "more likely case is that both parties will be willing participants and that the assignment of culpability only to one will be perceived as unfair."[46]

In addition to the extraordinary reduction in punishment for teenage oral sex reflected in the 2006 Amendment to OCGA § 16-6-4, the 2006 Amendment to that statute also provided for a large increase in the punishment for adults who engage in child molestation and aggravated child molestation. The new punishment for adults who engage in child molestation is ten years to life in prison,[47] whereas the punishment under the prior law was imprisonment "for not less than five nor more than 20 years."[48] For aggravated child molestation, the punishment for adults is now 25 years to life, followed by life on probation, with no possibility of probation or parole for the minimum prison time of 25 years.[49] The significant increase in punishment for adult offenders highlights the legislature's view that a teenager

---

molestation committed in the United States by teenagers each year. See Michelle Oberman, Regulating Consensual Sex with Minors: Defining a Role for Statutory Rape, 48 Buffalo L. Rev. 703, 703-704 (2000).

[43] *Roper v. Simmons*, 543 U. S. 551, 569-570 (125 SC 1183, 161 LE2d 1) (2005).

[44] See Daryl J. Olszewski, Comment, Statutory Rape in Wisconsin: History, Rationale, and the Need for Reform, 89 Marq. L. Rev. 693, 706 (2006) (stating that "[i]t is intuitive that the risk of coercion is substantially decreased when partners are close in age" and chronicling the enactment of laws either substantially reducing the criminal liability for sexual conduct between teenagers who are close in age or making such conduct non-criminal).

[45] Model Penal Code § 213.3 (1) (a) (Official Draft and Revised Comments 1980).

[46] Id. at p. 385.

[47] OCGA § 16-6-4 (b) (1), as amended by Ga. L. 2006, p. 379, § 11.

[48] Former OCGA § 16-6-4 (b), Ga. L. 1995, p. 957, § 4.

[49] See OCGA § 16-6-4 (d) (1), as amended by Ga. L. 2006, p. 379, § 11; OCGA § 17-10-6.1 (b) (2), as amended by Ga. L. 2006, p. 379, § 20.

engaging in oral sex with a willing teenage partner is far from the worst offender and is, in fact, not deserving of similar punishment to an adult offender.

Although society has a significant interest in protecting children from premature sexual activity, we must acknowledge that Wilson's crime does not rise to the level of culpability of adults who prey on children and that, for the law to punish Wilson as it would an adult, with the extraordinarily harsh punishment of ten years in prison without the possibility of probation or parole, appears to be grossly disproportionate to his crime.

Based on the foregoing factors and, in particular, based on the significance of the sea change in the General Assembly's view of the appropriate punishment for teenage oral sex, we could comfortably conclude that Wilson's punishment, as a matter of law, is grossly disproportionate to his crime without undertaking the further comparisons outlined in *Harmelin* and *Ewing*. However, we nevertheless will undertake those comparisons to complete our analysis.

(d) A comparison of Wilson's sentence with sentences for other crimes in this State buttresses the threshold inference of gross disproportionality. For example, a defendant who gets in a heated argument and shoving match with someone, walks away to retrieve a weapon, returns minutes later with a gun, and intentionally shoots and kills the person may be convicted of voluntary manslaughter and sentenced to as little as one year in prison.[50] A person who plays Russian Roulette with a loaded handgun and causes the death of another person by shooting him or her with the loaded weapon may be convicted of involuntary manslaughter and receive a sentence of as little as one year in prison and no more than ten years.[51] A person who intentionally shoots someone with the intent to kill, but fails in his aim such that the victim survives, may be convicted of aggravated assault and receive as little as one year in prison.[52] A person who maliciously burns a neighbor's child in hot water, causing the child to lose use of a member of his or her body, may be convicted of aggravated battery and receive a sentence of as little as one year in prison.[53] Finally, at the time Wilson committed his offense, a fifty-year-old man who fondled a five-year-old girl for his sexual gratification could receive as little as five years in prison,[54] and a person who beat,

---

[50] OCGA § 16-5-2.

[51] See OCGA §§ 16-5-3 (a); 16-5-60; *Noble v. State*, 282 Ga. App. 311 (638 SE2d 444) (2006).

[52] OCGA § 16-5-21 (b).

[53] OCGA § 16-5-24 (b).

[54] Former OCGA § 16-6-4 (a), (b).

choked, and forcibly raped a woman against her will could be sentenced to ten years in prison.[55] There can be no legitimate dispute that the foregoing crimes are far more serious and disruptive of the social order than a teenager receiving oral sex from another willing teenager. The fact that these more culpable offenders may receive a significantly smaller or similar sentence buttresses our initial judgment that Wilson's sentence is grossly disproportionate to his crime.

(e) Finally, we compare Wilson's sentence to sentences imposed in other states for the same conduct. A review of other jurisdictions reveals that most states either would not punish Wilson's conduct at all[56] or would, like Georgia now, punish it as a misdemeanor.[57] Although some states retain a felony designation for Wilson's conduct, we have found no state that imposes a minimum punishment of ten years in prison with no possibility of probation or parole, such as that provided for by former OCGA § 16-6-4.[58] This review thus also reinforces our initial judgment of gross disproportionality between Wilson's crime and his sentence.

(f) At this point, the Supreme Court's decision in *Weems v. United States*[59] merits discussion. In that case, Weems forged signatures on several public documents. The Supreme Court found that a minimum sentence of 12 years in chains at hard labor for falsifying public documents, combined with lifetime surveillance by appropriate authorities after Weems's release from prison,[60] constituted cruel and unusual punishment. The Court stated that, because the minimum

---

[55] See former OCGA § 16-6-1 (b), Ga. L. 1999, p. 666, § 1.

[56] See, e.g., Alaska Stat. § 11.41.436 (Wilson guilty of no crime; seventeen-year-old offender must be more than four years older than victim to be guilty); Colo. Rev. Stat. §§ 18-3-402; 18-3-405 (teens guilty of sexual assault for oral sex only if "the victim is less than fifteen years of age and the actor is at least four years older than the victim"); Del. Code Ann. Tit. 11, § 762 (d) (no crime for oral sex between teenagers if the defendant is not more than four years older than the under sixteen-year-old victim); D.C. Code §§ 22-3001 (3); 22-3008; 22-3009 (no crime for oral sex between teenagers if the defendant is not more than four years older than the under sixteen-year-old victim); Haw. Rev. Stat. § 707-730 (1) (c) (no crime if defendant is less than five years older than fourteen and fifteen-year-old participant); Ind. Code §§ 35-42-4-3; 35-42-4-9; Iowa Code §§ 709.4 (2) (c) (4); 709.12; Ken. Rev. Stat. Ann. § 510.130; Me. Rev. Stat. Ann. § 254 (oral sex with a person who is fourteen or fifteen years old is a crime only when the defendant is at least five years older than that person).

[57] See, e.g., Ark. Code Ann. § 5-14-127 (a) (2), (b) (2); Cal. Penal Code § 288a; 720 Ill. Comp. Stat. § 5/12-15 (c), (d); La. Rev. Stat. Ann. § 14:80.1.

[58] See, e.g., Ala. Code § 13A-6-64 (a) (1) (2-20 years); Ariz. Rev. Stat. Ann. §§ 13-1405 (B); 13-1407 (F) (class 6 felony because Wilson was more than two years older than victim with maximum punishment of two years in prison); Conn. Gen. Stat. § 53a-71 (guilty of sexual assault in the second degree with a sentence of 1-20 years); Fla. Stat. §§ 800.04 (4); 775.082 (3) (c) (1-15 years); Minn. Stat. Ann. § 609.344 (b) (third degree criminal sexual conduct; imprisonment for no more than five years).

[59] 217 U. S. 349 (30 SC 544, 54 LE 793) (1910).

[60] The surveillance requirements at issue in *Weems* are similar to the sex offender registration requirements imposed on Wilson.

punishment imposed on Weems was more severe than or similar to punishments for some "degrees of homicide" and other more serious crimes, Weems's punishment was cruel and unusual.[61] According to the Court,

> this contrast shows more than different exercises of legislative judgment. It is greater than that. It condemns the sentence in this case as cruel and unusual. It exhibits a difference between unrestrained power and that which is exercised under the spirit of constitutional limitations formed to establish justice.[62]

(g) All of the foregoing considerations compel the conclusion that Wilson's sentence is grossly disproportionate to his crime and constitutes cruel and unusual punishment under both the Georgia and United States Constitutions. We emphasize that it is the "rare case[ ]" in which the threshold inference of gross disproportionality will be met and a rarer case still in which that threshold inference stands after further scrutiny.[63] The present case, however, is one of those rare cases. We also emphasize that nothing in this opinion should be read as endorsing attempts by the judiciary to apply statutes retroactively. As in *Fleming* and *Dawson*, in which this Court did not apply the legislative amendments retroactively, we are not applying the 2006 Amendment retroactively in this case. Instead, as in *Fleming* and *Dawson*, we merely factor the 2006 Amendment into the evaluation of whether Wilson's punishment is cruel and unusual.

As a final matter, the dissent's concerns about the impact of today's opinion are unfounded. In point of fact, today's opinion will affect only a small number of individuals whose crimes and circumstances are similar to Wilson's, i.e., those teenagers convicted only of aggravated child molestation, based solely on an act of sodomy, with no injury to the victim, involving a willing teenage partner no more than four years younger than the defendant. For example, in this regard, Widner was convicted not only of aggravated child molestation but also of statutory rape.[64]

4. The State contends that, even if the habeas court properly concluded that Wilson's punishment was cruel and unusual, it had no authority to resentence Wilson for a lesser crime. We agree that the trial court did not grant the proper relief to Wilson.

---

[61] Id. at 380-381.

[62] Id. at 381.

[63] See *Ewing*, 538 U. S. at 30.

[64] *Widner*, 280 Ga. 675.

In *Weems*,[65] after concluding that the minimum sentence of twelve years in chains at hard labor constituted cruel and unusual punishment, the Court ruled that, because the minimum punishment was unconstitutional and because there was no other law under which Weems could be sentenced, Weems's "judgment [had to] be reversed, with directions to dismiss the proceedings."[66] Similarly, in the present case, Wilson stands convicted of aggravated child molestation, and, as in *Weems*, we have determined that, under the statute then in effect, the minimum punishment authorized by the legislature for that crime is unconstitutional. Because *Weems* was decided on direct appeal, and the present case stems from Wilson's habeas petition, we cannot direct the trial court to set aside the judgment and to dismiss the proceedings against Wilson. Instead, the corresponding and appropriate habeas relief would be for the habeas court to set aside Wilson's sentence and to discharge Wilson from custody.

*Judgment affirmed in part and reversed in part and case remanded with direction in Case No. S07A1481. All the Justices concur, except Carley, Hines, and Melton, JJ., who dissent. Judgment affirmed in Case No. S07A1606. All the Justices concur.*

CARLEY, Justice, concurring in part and dissenting in part.

I concur fully in affirmance of the judgment in Case Number S07A1606, since the clear and unambiguous terms of OCGA § 17-6-1 (g) preclude bail for anyone who is serving a sentence for commission of the crime of which, at least until today, Wilson stood convicted. In Case Number S07A1481, however, the majority demonstrates that its commitment to effectuating clear and unambiguous statutory language is wholly subjective and entirely selective. There, it employs the guarantee against cruel and unusual punishment as a guise to extend the applicability of the 2006 amendment to OCGA § 16-6-4 retroactively, notwithstanding that doing so is in direct contravention of the express legislative intent of the General Assembly. Because I believe that the majority's conclusion that Wilson's felony sentence constitutes cruel and unusual punishment does violence to the fundamental constitutional principle of separation of powers and is contrary to the doctrine of stare decisis, I respectfully dissent to the judgment of affirmance in Case Number S07A1481.

It is important to note at the outset that the factual basis for Wilson's prosecution is not an act which is in any sense protected by the constitutional right of privacy. The evidence shows that

---

[65] 217 U. S. 349.

[66] Id. at 382. Accord 3 LaFave, Substantive Criminal Law § 3.5 (f), p. 250 (2d ed. 2003) (if only punishment provided by law is unconstitutional, the defendant must be discharged).

[a] group of teenagers rented adjacent rooms at a motel and held a raucous, unsupervised New Year's Eve party. Among the participants were 17-year-old Genarlow Wilson, 17-year-old L. M., and 15-year-old T. C. The next morning, L. M. reported to her mother that she had been raped. Police were notified, and the motel rooms were searched. During the search, a videocamera and videocassette tape were found. The tape showed Wilson having sexual intercourse with an apparently semiconscious L. M. and T. C. performing oral sex on Wilson. As a result, Wilson was charged with the rape of L. M. and with the aggravated child molestation of T. C. Acquitted of the former offense and convicted of the latter, he was given a mandatory sentence of ten years imprisonment without possibility of parole.

*Wilson v. State*, 279 Ga. App. 459 (631 SE2d 391) (2006).

When Wilson engaged in the very public act of oral sodomy with a 15-year-old child, he committed the crime of aggravated child molestation and, as a result, he received the felony sentence mandated for that offense. Former OCGA § 16-6-4 (d) (1). Subsequently, the General Assembly did amend the statute so as to provide that the crime of aggravated child molestation committed under the factual circumstances which underlay Wilson's prosecution would only be punishable as a misdemeanor. OCGA § 16-6-4 (d) (2). However, the effective date of that change in the law was July 1, 2006, which is more than a year-and-a-half after Wilson committed the offense for which he was convicted. Ga. L. 2006, pp. 379, 413, § 30 (a). In amending the law to provide for misdemeanor punishment, the General Assembly not only provided generally that the change would become effective on July 1, 2006. It also specifically addressed the issue of retroactive application, expressing the legislative intent that

> [t]he provisions of this Act *shall not affect or abate the status as a crime of any such act or omission which occurred prior to the effective date of the Act repealing, repealing and reenacting, or amending such law*, nor shall the prosecution of such crime be abated as a result of such repeal, repeal and reenactment, or amendment. (Emphasis supplied.)

Ga. L. 2006, pp. 379, 413, § 30 (c). Obviously, the effect of this clear and unambiguous provision is to preclude giving retroactive effect to the 2006 amendment so as to "affect or abate" the status of Wilson's crime as felony aggravated child molestation punishable in accordance with the sentence authorized at the time he committed that offense. The majority fails to acknowledge this provision of the

statute, presumably because to do so would completely destroy the foundation upon which it bases its ultimate conclusion that Wilson's felony sentence constitutes cruel and unusual punishment.

In connection with a claim of cruel and unusual punishment, the enactments of the General Assembly are the clearest and best evidence of a society's evolving standards of decency and of how contemporary society views a particular punishment. *Johnson v. State*, 276 Ga. 57, 62 (5) (573 SE2d 362) (2002). The majority acknowledges this tenet and purports to invoke it. However, a faithful adherence to that principle would seem to require a consideration of the totality of the law in question, which in this case certainly includes § 30 (c) of the 2006 statute. This Court has not always chosen to ignore that relevant and controlling language of the applicable statute. When Wilson applied unsuccessfully for a writ of certiorari to review the Court of Appeals' affirmance of his conviction, Presiding Justice Hunstein concurred and took that occasion to note for the benefit of the bench and bar that,

> . [a]lthough the situation in this case would fall within the ambit of the current statute, which became effective July 1, 2006, while Wilson's appeal from the affirmance of his conviction by the Court of Appeals was pending before this Court, see Ga. L. 2006, p. 379, § 11/HB 1059, *the Legislature expressly chose not to allow the provisions of the new amendments to affect persons convicted under the previous version of the statute. See id. at § 30 (c).* Accordingly, while I am very sympathetic to Wilson's argument regarding the injustice of sentencing this promising young man with good grades and no criminal history to ten years in prison without parole and a lifetime registration as a sexual offender because he engaged in consensual oral sex with a 15-year-old victim only two years his junior, *this Court is bound by the Legislature's determination that young persons in Wilson's situation are not entitled to the misdemeanor treatment now accorded to identical behavior under OCGA § 16-6-4 (d) (2).* (Emphasis supplied.)

*Wilson v. State*, 281 Ga. 447 (642 SE2d 1) (2006). Despite this succinct and cogent observation, however, it now appears that this Court is willing to consider itself to be "bound by the Legislature's determination" only so long as a majority of its members determines that it is expedient to give effect to the General Assembly's express intent that the 2006 amendment to the statute "not affect or abate the status as a crime of any such act or omission which occurred prior to" July 1, 2006.

The majority relies on *Fleming v. Zant*, 259 Ga. 687 (386 SE2d 339) (1989) as support for its holding. However, that case obviously is not relevant to the present context, since the statute in question there did not contain any provision comparable to § 30 (c) of the 2006 law clearly establishing the immutability of Wilson's status as one who is guilty of felony aggravated child molestation. To the contrary, the relevant statute in *Fleming* merely provided that capital punishment would no longer be an available sentence for any defendant found "guilty but mentally retarded" in the trial of any capital case " 'which commences on or after July 1, 1988.' [Cit.]" *Fleming v. Zant*, supra at 688 (1). Thus, entirely unlike § 30 (c) of the 2006 statute which applies here, this Court was not presented in *Fleming* with a clear and unequivocal expression of legislative intent that the elimination of the death penalty for mentally retarded defendants would *not* affect the status of a previously convicted individual. Accordingly, there was nothing in the text of the statute addressed in *Fleming* which would preclude this Court from relying on that legislation as evidence that

> this state's elected representatives, voicing the will of the electorate, have spoken on the subject and have declared that if a defendant is found to be mentally retarded, "the death penalty shall not be imposed and the court shall sentence the defendant to imprisonment for life." [Cit.] The legislative enactment reflects a decision by the people of Georgia that the execution of mentally retarded offenders makes no measurable contribution to acceptable goals of punishment.

*Fleming v. Zant*, supra at 690 (3). Applying that rationale of *Fleming* here, § 30 (c) of the 2006 statute plainly shows that the elected members of the General Assembly, expressing the will of the voters, have spoken and declared that, notwithstanding the appropriateness of misdemeanor punishment for defendants convicted of aggravated child molestation committed after July 1, 2006, for those, like Wilson, who committed the crime before that date, a felony sentence in accordance with former OCGA § 16-6-4 (d) (1) remains in effect. Thus, when *Fleming* is invoked for the principle for which it actually stands, that case supports a holding which is wholly contrary to that reached by the majority.

The majority also cites *Dawson v. State*, 274 Ga. 327 (554 SE2d 137) (2001) as support. However, unlike the 2006 law at issue here, the statutory amendment in question in *Dawson* did not relate to a legislative change in the magnitude of the sentence to be imposed for a given offense. Instead, the statute merely related to the manner in

which a death sentence would be carried out in this state, substituting lethal injection for electrocution. More importantly, however, as was true in *Fleming*, there was no statutory counterpart to § 30 (c) at issue in *Dawson*. To the contrary, it was noted that the General Assembly had

> recognized the possibility that this Court would find unconstitutional its retention of electrocution as the method of executing persons sentenced to death for capital offenses committed before [the] statute's effective date. In anticipation of such a ruling and with full awareness of the disfavor into which death by electrocution has fallen, [cits.] the Legislature made *express provisions in the uncodified section of OCGA § 17-10-38.* It specifically stated that "(i)t is the further *intention of the General Assembly that persons sentenced to death for crimes committed prior to the effective date of this Act be executed by lethal injection* if the Supreme Court of the United States declares that electrocution violates the Constitution of the United States or *if the Supreme Court of Georgia declares that electrocution violates the Constitution of the United States or the Constitution of Georgia."* [Cits.] (Emphasis supplied.)

*Dawson v. State*, supra at 329-330 (2). Applying the rationale of *Dawson* here, when the General Assembly enacted the 2006 amendment, it did not anticipate today's holding that this Court would declare a felony sentence imposed under former OCGA § 16-6-4 (d) to be cruel and unusual punishment and expressly provide that, in that event, one who had been convicted of felony aggravated child molestation prior to July 1, 2006 should be resentenced for a misdemeanor. Instead, the General Assembly expressly stated that in no event was the 2006 amendment to affect or abate the status as a crime of any act or omission which occurred prior to its effective date. Giving the same effect to the legislative intent clearly expressed in § 30 (c) as this Court gave to the legislative intent expressed in the amendment construed in *Dawson* compels the conclusion that the status of the crime committed by Wilson remains a felony and is punishable as such.

> "The General Assembly is presumed to enact laws with full knowledge of the condition of the law and with reference to it, (cit.) and the courts will not presume that the legislature intended to enact an unconstitutional law. (Cits.)" [Cit.]

*Hamilton v. Renewed Hope,* 277 Ga. 465, 467 (589 SE2d 81) (2003). In accordance with this principle, this Court should presume that the General Assembly enacted the 2006 amendment with full knowledge of the decisions in *Fleming* and *Dawson,* and that the language of § 30 (c) was included for the express purpose of distinguishing those cases and thereby eliminating the possibility of reliance on them by the judiciary as the basis for holding that the newly enacted provision authorizing misdemeanor sentencing was evidence that the felony sentencing being replaced was cruel and unusual punishment. Today, however, a majority of this Court simply ignores that express legislative intent, and actually cites *Fleming* and *Dawson* for the very purpose which the General Assembly presumptively foreclosed judicial reliance. However, § 30 (c) cannot be ignored and it clearly distinguishes *Fleming* and *Dawson.* Without those cases, the majority is left with absolutely nothing to support its conclusion that the felony sentence which was authorized when Wilson committed the offense of aggravated child molestation became cruel and unusual punishment when, more than a year later, the General Assembly lessened the penalty for that offense and mandated only a prospective application for that change.

Once the fallacy of the majority's reliance on *Fleming* and *Dawson* is demonstrated, the error in the conclusion built upon that misplaced reliance becomes readily apparent. The General Assembly formerly provided for felony sentencing for aggravated child molestation involving sodomy with a child.

> The State's "interest in safeguarding the physical and psychological well-being of a minor is compelling and beyond the need for elaboration." [Cit.] As this Court noted in *Powell,* "many believe that acts of sodomy . . . are morally reprehensible." *Powell* [*v. State,* 270 Ga. 327,] 335 [(3) (510 SE2d 18) (1998)]. . . . [T]he General Assembly could reasonably conclude that the psychological well-being of minors is more damaged by acts of sodomy than by acts of intercourse, and that such acts warrant a greater punishment for child molestation by sodomy . . . .

*Odett v. State,* 273 Ga. 353, 355 (2) (541 SE2d 29) (2001). When, in 2006, the General Assembly determined that misdemeanor sentencing was the more appropriate sentence in certain circumstances, it expressly stated that that lesser sentence would only apply after the effective date of July 1 *and* that the status of previous convictions for aggravated child molestation would not be affected by that change. Compare *Dawson v. State,* supra; *Fleming v. Zant,* supra. Accordingly, the proper question in this case is certainly not whether former

OCGA § 16-6-4 (d) (1) constitutes cruel and unusual punishment. Instead, the only appropriate inquiry is whether the General Assembly violated the guarantee against cruel and unusual punishment when it expressly determined that the 2006 amendment would not be applied retroactively so as to reduce Wilson's sentence from a felony to a misdemeanor. It is clear that this Court previously answered that precise question when, in *Widner v. State*, 280 Ga. 675, 677 (2) (631 SE2d 675) (2006), it unanimously held that, because the 2006 amendment

> did not become effective until after [the defendant] was sentenced, . . . it cannot be applied to his case. "(I)t has long been the law in this State that, in general, a crime is to be construed and punished according to the provisions of the law existing at the time of its commission." [Cit.] "(M)aking (a) lesser penalty applicable to offenses committed prior to the enactment of the legislation (creating the lesser penalty) is contrary to the judicial interpretation of the (laws) of this State under which the penalty for a criminal offense relates only to those offenses committed when and after such legislation becomes effective." [Cit.]

The majority attempts to distinguish *Widner* by asserting that the 2006 amendment did not apply there in any event because the defendant, at the age of eighteen-and-a-half, was more than four years older than the victim and, thus, he was ineligible for misdemeanor punishment. However, this disparity in age does not appear in *Widner*. To the contrary, the opinion plainly states that "Widner contends that his crime should be given special treatment and excepted from the mandated punishment because *he was eighteen at the time of the act and the victim was only four years younger*." (Emphasis supplied.) *Widner v. State*, supra at 676 (1). More importantly, however, even assuming that there may have been a disqualifying disparity between the ages of the defendant and victim in *Widner*, the incontestable fact remains that this Court did not cite that as a factor in its holding that the statute was inapplicable. Instead, we predicated our holding on the power of the General Assembly to limit the applicability of the 2006 amendment to offenses of aggravated child molestation occurring after July 1, 2006. The majority does not cite any authority for holding that the constitutional guarantee against cruel and unusual punishment is a curb on the exercise of the legislative power of the General Assembly, clearly recognized in *Widner*, to enact an express proscription against retroactive application of its statutes which lessen the punishment for crimes committed in this state.

The majority does not demonstrate that an unqualified felony sentence for aggravated child molestation constituted cruel and unusual punishment at the time that Wilson committed that crime. Compare *Weems v. United States*, 217 U. S. 349 (30 SC 544, 54 LE 793) (1910) (which the majority cites, but which actually involved appellate review of a holding *on direct appeal* that the sentence *then authorized* by statute was not cruel and unusual). Indeed, it cannot so demonstrate, since the law which was then in effect "provide[d] no such exception [to mandatory felony sentencing based upon the age of the defendant and victim], and, because the required punishment does not unconstitutionally shock the conscience, [such a] sentence must stand." *Widner v. State*, supra. Wilson's sentence does not become cruel and unusual simply because the General Assembly made the express decision that he cannot benefit from the subsequent legislative determination to reduce the sentence for commission of that crime from felony to misdemeanor status. To the contrary, it is because the General Assembly made that express determination that his felony sentence cannot be deemed cruel and unusual. "It is for the legislature to 'determine to what extent certain criminal conduct has demonstrated more serious criminal interest and damaged society and to what extent it should be punished.' [Cits.]" *State v. Marlowe*, 277 Ga. 383-384 (1) (589 SE2d 69) (2003).

The majority characterizes its opinion a "rare case," claiming on p. 532 that,

[a]s in *Fleming* and *Dawson*, in which this Court did not apply the legislative amendments retroactively, we are not applying the 2006 Amendment retroactively in this case. Instead, as in *Fleming* and *Dawson*, we merely factor the 2006 Amendment into the evaluation of whether Wilson's punishment is cruel and unusual.

In actuality, however, today's decision is rare because of its unprecedented disregard for the General Assembly's constitutional authority to make express provision against the giving of any retroactive effect to its legislative lessening of the punishment for criminal offenses. If, notwithstanding a provision such as § 30 (c), the judiciary is permitted to determine that a formerly authorized harsher sentence nevertheless constitutes cruel and unusual punishment, then it necessarily follows that there are no circumstances in which the General Assembly can insulate its subsequent reduction of a criminal sentence from possible retroactive application by courts. Wilson is certainly not the only defendant convicted of aggravated child molestation who benefits at the expense of today's judicial reduction of the General Assembly's power to legislate. At present, any and all

defendants who were ever convicted of aggravated child molestation and sentenced for a felony under circumstances similar to Wilson are, as a matter of law, entitled to be completely discharged from lawful custody even though the General Assembly expressly provided that their status as convicted felons would not be affected by the very statute upon which the majority relies to free them. Compare *Weems v. United States*, supra (a narrow holding that the sentence *then in effect* was cruel and unusual). Moreover, nothing in today's decision limits its application to cases involving minors who engage in voluntary sexual acts. Any defendant who was ever convicted in this state for the commission of any crime for which the sentence was subsequently reduced is now entitled to claim that his harsher sentence, though authorized under the statute in effect at the time it was imposed, has since become cruel and unusual and that, as a consequence, he is not only entitled to the benefit of the more lenient sentence, but should be released entirely from incarceration. See generally *Dennard v. State*, 243 Ga. App. 868, 875 (1) (e) (534 SE2d 182) (2000) (no retroactive application of 1999 enactment making certain sexual offenses involving children a high and aggravated misdemeanor rather than felony); *Lockhart v. State*, 227 Ga. App. 481 (489 SE2d 594) (1997) (no retroactive application of reduction in minimum sentence for rape from ten years to one year). Compare *Weems v. United States*, supra (which did not hold that the sentence that was statutorily authorized at the time it was imposed became cruel and unusual pursuant to retroactive application of a newly enacted statute). Accordingly, as a result of this "rare case," the superior courts should be prepared for a flood of habeas corpus petitions filed by prisoners who seek to be freed from imprisonment because of a subsequent reduction in the applicable sentences for the crimes for which they were convicted. Compare *Weems v. United States*, supra.

The courts of this state must give due regard to the authority of the legislative branch of government.

> The constitutional principle of separation of powers is intended to protect the citizens of this state from the tyranny of the judiciary, insuring that the authority to enact the laws will be exercised only by those representatives duly elected to serve as legislators. The General Assembly "being the sovereign power in the State, while acting with the pale of its constitutional competency, it is the province of the Courts to interpret its mandates, and their duty to obey them, however absurd and unreasonable they may appear." [Cit.]

*Fullwood v. Sivley*, 271 Ga. 248, 254 (517 SE2d 511) (1999). The General Assembly's express determination that the 2006 amendment not affect or abate the status of Wilson's crime as felony aggravated child molestation may appear to some of the citizens of this State as absurd or unreasonable. However, this Court has the obligation to effectuate that legislative determination unless there is a constitutional impediment to the General Assembly's power to limit its statutes lessening the sentences for criminal offenses to prospective application only. In *Widner*, we unanimously held that the General Assembly was authorized to limit application of the 2006 amendment to acts of aggravated child molestation committed after July 1, 2006. Because today's opinion violates the principle of separation of powers and is contrary to the doctrine of stare decisis, I dissent to affirmance of the grant of Wilson's application for a writ of habeas corpus.

I am authorized to state that Justice Hines and Justice Melton join in this opinion.

DECIDED OCTOBER 26, 2007.

*Case No. S07A1481*

*Thurbert E. Baker, Attorney General, Mary Beth Westmoreland, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Brenda J. Bernstein, Rodney S. Zell, Franklin J. Hogue*, for appellee.

*McKenna, Long & Aldridge, David Balser, Cleve L. Molette*, amici curiae.

*Case No. S07A1606*

*Brenda J. Bernstein, Rodney S. Zell*, for appellant.

*J. David McDade, District Attorney, Thurbert E. Baker, Attorney General*, for appellee.