## 28967. THE STATE v. COLLETT.

INGRAM, Justice.

Certiorari was granted to review a 5-4 decision of the Court of Appeals in which the majority concluded that banishment of the defendant from seven counties in Georgia, imposed as a condition for suspension of a sentence by the trial court, violates the public policy of the state. We have determined the decision by the Court of Appeals must be reversed.

The 1945 Georgia Constitution (Code Ann. § 2-107) expressly forbids banishment beyond the limits of the state. This provision was placed in the 1877 Constitution of Georgia and subsequently included in the present Constitution in the same language. The question presented is whether the 1877 drafters of this constitutional provision intended to prohibit banishment "beyond the limits of the state" but not to prohibit banishment from specified areas within the state.

Author Walter McElreath makes this historical comment about the banishment section: "Transportation or banishment for crime was unknown to the common law, but in England by statute some felonies were so punishable. Neither banishment nor whipping were within the meaning of 'cruel and unusual punishment,' as used in the Act of Settlement from which these words were taken, nor were they understood as such when Georgia became an independent state, and they are, therefore, not prohibited by the provisions . . . of this

section (which prohibit cruel and unusual punishment), and the foregoing paragraph was inserted in the (1877) Constitution to add banishment and whipping to the class . . . which the enlightened humanity of the present day regards as, in fact, cruel." McElreath, On the Constitution of Georgia, The Harrison Company (publisher), p. 442 (1912).[1]

Dr. Ethel K. Ware, in A Constitutional History of Georgia,[2] makes this observation about the banishment provision included in the 1877 Constitution: "Certain other subjects which might . . . better have been left to the legislature were nevertheless imbedded in the organic law: the abolition of whipping and of banishment as punishment for crime, . . ."

Thus, we see that the historical policy of the state prohibits banishment from the state and this policy is firmly fixed in our fundamental law. The suspension condition imposed in the sentence in the present case is within the broad definition of banishment as that term generally has been used in legal writings. However, the

---

[1] Pertinent notes of the Constitutional Convention, relating to this section of the Constitution, provide:

"Section 22 was read as follows:

" '22. Banishment beyond the limits of the state, as a punishment for crime, shall not be allowed.'

"Mr. Wilson. I move to amend by inserting 'neither' before 'banishment,' and add after it 'nor whipping,' and striking out 'not,' so that the section will read as follows:

" 'Neither banishment beyond the limits of the state, nor whipping, as a punishment for crime, shall be allowed.'

"The amendment was received.

. . . .

"Section 22 was read and agreed to."

(Small, A Stenographic Report of the Proceedings of the Constitutional Convention; Constitution Publishing Co., p. 91 (1877)).

[2] Ware, A Constitutional History of Georgia, Columbia University Press, p. 164 (1947).

drafters of our constitutional prohibition against banishment limited this general definition by choosing to define banishment more narrowly to mean only banishment beyond the limits of the state. Neither the constitutional authors nor the legislature has addressed the question of "banishment" from designated areas within the state as a condition of suspension of a sentence. The legislature has expressed a policy with respect to conditions of probation. Code Ann. § 27-2711 provides the court may require the probationer to "remain within a specified location," in addition to compliance with other conditions set forth in the statute. The majority of the Court of Appeals has reasoned that the form of banishment used to suspend the sentence in the present case should be prohibited in Georgia. Perhaps this is true, but we believe that if it is to be absolutely prohibited, it must be done by the legislature. There presently is no statute in Georgia providing conditions for suspension of a sentence except Code Ann. § 27-2502 which gives the trial judge authority to suspend or probate a sentence under such rules and regulations as the judge deems proper. Ga. L. 1974, p. 354.

The probation and suspension statutes in Georgia vest broad discretion in trial judges. In the absence of express authority to the contrary, we see no logical reason why any reasonable condition imposed for probation or suspension of a sentence by a trial court should not be approved. Probated and suspended sentences, upon reasonable conditions, have traditionally been used by trial judges in Georgia as effective tools of rehabilitation and serve a useful purpose in appropriate cases as an alternative to confinement. E. g., see, *Davis v. State,* 53 Ga. App. 325, 329 (185 SE 400); *Gay v. State,* 101 Ga. App. 225 (1) (113 SE2d 223); *O'Quinn v. State,* 121 Ga. App. 231 (3) (173 SE2d 409); *Falkenhainer v. State,* 122 Ga. App. 478 (177 SE2d 380); *Cross v. Huff,* 208 Ga. 392 (67 SE2d 124).

The defendant in the present case has made only a general attack on the present sentence as being illegal, contending it is per se violative of public policy. There has been no showing in this case that the imposed condition to remain outside the seven specified counties for the

period of the sentence (12 months) is unreasonable or otherwise fails to bear a logical relationship to the rehabilitative scheme of the sentence pronounced for this drug crime. Cf., *Inman v. State*, 124 Ga. App. 190 (183 SE2d 413). When this is considered against the background of the power and authority a trial judge has under the law to suspend a sentence under such rules and regulations as he deems proper, we cannot agree the present sentence "is illegal and void," as contended by the defendant. It has not been shown the trial judge abused his discretion in this case, and, therefore, the judgment of the Court of Appeals must be reversed.

*Judgment reversed. All the Justices concur, except Undercofler, J., who dissents. Hall, J., disqualified.*

ARGUED JULY 8, 1974 — DECIDED SEPTEMBER 4, 1974.

*Ralph Kearns, Sam Huff, Assistant District Attorneys, Thomas J. Browning,* for appellant.

*Al Horn, Lawrence L. Schneider,* for appellee.

UNDERCOFLER, Justice, dissenting.

In my opinion banishment from a county as a condition for suspension of a sentence is against public policy because it would permit one county to relegate its criminals to other counties and thereby create dissension, provoke retaliation and tend to disrupt a harmonious relationship between counties. See People v. Blakeman, 170 Cal. App. 2d 596 (339 P2d 202).