S08A0170. TERRY v. HAMRICK.

(663 SE2d 256)

HINES, Justice.

This Court granted Gregory Mac Terry's application for a certificate of probable cause to appeal the denial of habeas corpus relief. For the reasons that follow, we affirm in part, reverse in part, and remand with direction.

In 1994, Terry was indicted by a Douglas County grand jury on charges of aggravated stalking, kidnapping with bodily injury, aggravated assault, reckless driving, attempting to elude a police officer, passing within 200 feet of oncoming traffic, driving with a suspended license, and criminal trespass. On August 10, 1995, Terry pled guilty to all charges but kidnapping with bodily injury, and was sentenced to serve a total of 30 years, with 20 in custody; an order of nolle prosequi was entered on the charge of kidnapping with bodily injury. In 2006, Terry filed a petition for a writ of habeas corpus, asserting that his guilty plea was not knowingly and voluntarily entered, trial counsel was ineffective, the trial court was biased against him, and that his sentence was unconstitutional in that the trial court included the condition that during the duration of probation and

parole, Terry would be banished from all counties in Georgia except Toombs County. After a hearing, the habeas court denied his petition on all grounds; on appeal, Terry argues the issues relating to his sentence.[1] "The proper standard of review requires that we accept the habeas court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citations and punctuation omitted.) *Upton v. Johnson*, 282 Ga. 600, 602 (652 SE2d 516) (2007).

1. We first address whether Terry properly brought his claims as a petition for a writ of habeas corpus, or whether a proceeding should have been addressed to the trial court. While the sentencing court retains jurisdiction over Terry during any period of probation and may modify or correct its probated sentence as necessary, OCGA § 42-8-34 (g), Terry did more than simply seek a modification of the conditions of his probation; he asserted that his sentence was unconstitutional. When making such a claim, the seeking of a writ of habeas corpus is an available avenue for relief. See OCGA § 9-14-42 (a); *Hunter v. Dean*, 240 Ga. 214 (239 SE2d 791) (1977), overruled on other grounds, *Massey v. Meadows*, 253 Ga. 389, 390 (321 SE2d 703) (1984). To the extent that *Dean v. Whalen*, 234 Ga. 182 (215 SE2d 7) (1975), holds to the contrary, it is overruled.

2. The sentence, inter alia, stated that: "The Defendant is banished from every county in the State of Georgia except Toombs County. If he is seen in the State of Georgia, other than in Toombs County, during the term of this Sentence it would be a violation of his *parole* and probation." (Emphasis supplied.) Terry correctly asserts that this provision of his sentence violates this State's constitutional provision regarding the separation of powers. "The legislative, judicial, and executive powers shall forever remain separate and distinct; and no person discharging the duties of one shall at the same time exercise the functions of either of the others except as herein provided." Ga. Const. of 1983, Art. I, Sec. II, Par. III. The Board of Pardons and Paroles has executive power regarding the terms and conditions of paroles. See OCGA §§ 42-9-40, 42-9-44. See also *Stephens v. State*, 207 Ga. App. 645, 647 (2) (428 SE2d 661) (1993). Accordingly, the trial court's attempt to control parole conditions violates the constitutional provision regarding the separation of powers, and this portion of the sentence must be vacated. *Stephens*, supra. Thus, on remand, the habeas court must enter an order granting the writ of habeas corpus as to this issue.

---

[1] The habeas court's rulings as to the other grounds raised in Terry's petition for a writ of habeas corpus are amply supported by the record.

3. Terry also contends that, even when viewed solely as a condition of probation, the trial court's requirement that he be restricted to Toombs County during the period of probation is unconstitutional. He relies upon the state constitutional provision that: "Neither banishment beyond the limits of the state nor whipping shall be allowed as a punishment for crime." Ga. Const. of 1983, Art. I, Sec. I, Par. XXI. This Court addressed the constitutional prohibition of banishment in a similar context in *State v. Collett*, 232 Ga. 668 (208 SE2d 472) (1974). In that case, the challenge was to a condition of suspension in a sentence by which the defendant was banished from seven counties of the State. This Court's opinion examined the historical background of banishment as punishment for a crime and noted that the Constitution defined banishment "narrowly to mean *only* banishment beyond the limits of the state." (Emphasis supplied.) Id. at 670. Although Terry urges that banishment from 158 of Georgia's 159 counties is "de facto banishment from the entire State of Georgia," he is, in fact, not banished "beyond the limits of the state," and it is that which the Constitution forbids. Banishment from various counties of this State is not prohibited by the Constitution or by statute,[2] and "[i]n the absence of express authority to the contrary, we see no logical reason why any reasonable condition imposed for probation or suspension of a sentence by a trial court should not be approved." Id. However, banishment conditions are not unlimited: such conditions must not be "unreasonable or otherwise fail[ ] to bear a logical relationship to the rehabilitative scheme of the sentence pronounced . . . ." Id. at 671.

Although Terry asserts that there is no logical relationship between the limitation that he remain in Toombs County during his probation and the rehabilitative scheme, the habeas court found otherwise. As the habeas court noted in its order, the trial court imposed the condition because of "the trial court's concern with the

---

[2] In 2006, the General Assembly amended OCGA § 42-8-35 to read, inter alia:
(a) The court shall determine the terms and conditions of probation and may provide that the probationer shall:

. . .

(6) Remain within a specified location; provided, however, that the court shall not banish a probationer to any area within the state:
(A) That does not consist of at least one entire judicial circuit as described by Code Section 15-6-1; or
(B) In which any service or program in which the probationer must participate as a condition of probation is not available;

. . .

There is no assertion that the 2006 version of OCGA § 42-8-35 applies so as to govern Terry's probation conditions.

Petitioner's continued obsession with his ex-wife." And, there was more than ample basis for the trial court to have such concern. To commit his crimes, Terry violated a protective order regarding his ex-wife, and entered her home to await her arrival; he was psychologically evaluated as obsessed with her; he was "fixated on winning his family back"; and he was contemplating suicide at the time he committed the crimes, which included placing his ex-wife under his control. At his plea hearing, Terry admitted that he threatened to stab his ex-wife with scissors, and then to use them to kill himself, expressed his jealousy about his ex-wife's supposed affair with her employer, and said that before the police chased him, he was going to go confront the employer; he also professed that he "still love[d] her today." Terry also expressed the desire that upon release, he hoped to regain some visitation with his children, despite the statement of his oldest son that he had written to Terry and asked him to stop writing to him; Terry continued to write his son, despite the request to cease. In announcing its sentence, the trial court noted that it was particularly concerned that the incident could have resulted in a murder/suicide, and that a letter from Terry to his ex-wife referred to "when I'm released, even if it's after a hundred years —." The trial court found that for years Terry had followed a violent course of conduct toward his ex-wife, that he remained obsessed with her, and that she needed to be protected from that obsession.

The record clearly authorized the trial court to conclude that Terry had demonstrated a propensity for violence toward the victim that fully justified the court's concern for her safety, even after Terry's release from incarceration. See *Parrish v. State*, 182 Ga. App. 247, 248 (2) (355 SE2d 682) (1987). The trial court has broad discretion in fashioning probation conditions. *Collett*, supra. The rehabilitative scheme devised promoted the victim's protection; it was Terry whose movements had to be curtailed, not hers, and a scheme that allowed her to move freely about most of the state without fear of Terry was appropriate. The requirement that Terry remain in Toombs County is properly protective of the victim, and logically related to the rehabilitative scheme. Terry contends that the trial court could have fashioned probation conditions leaving him more freedom, and notes that the trial court has "the ability to protect the victim with appropriate orders of restraint." However, the very facts of this case show the inefficacy of such orders as applied to Terry; a restraining order was in place when he committed his crimes. Also, the habeas court determined that the ten-year period of time during which the banishment provision was effective was not unreasonable, and, given the evidence of Terry's obsession with his ex-wife, this was not error. See *Adams v. State*, 241 Ga. App. 810 (527 SE2d 911) (2000).

Terry urges that this Court look to the General Assembly's 2006 amendment of OCGA § 42-8-35, see footnote 2, supra, for guidance as to what is now considered a reasonable rehabilitative scheme, noting that today he could only be confined to an area that is comprised of at least one judicial circuit during probation. As authority for his proposal, Terry cites this Court's opinion in *Humphrey v. Wilson*, 282 Ga. 520, 527 (3) (c) (652 SE2d 501) (2007), which stated that "recent legislative enactments constitute the most objective evidence of a society's evolving standards of decency and of how a society views a particular punishment . . . ." However, that opinion's reliance on "evolving standards of decency" was in the context of a claim that a certain punishment was cruel and unusual, a claim as to which "evolving standards of decency" has been recognized as a concept offering some guidance to courts. Id. at 525 (3) (a). No claim of cruel and unusual punishment was addressed below and no enumeration of error on such a basis has been presented in this Court. Rather, the issue under this state's constitutional prohibition on banishment is whether the probation provision is unreasonable or fails to bear a logical relationship to the rehabilitative scheme. *Collett*, supra. Further, if this Court did look to such legislative changes for guidance as to what was constitutionally reasonable in the context of banishment, it would lead to an anomalous result; it would logically require that, were the General Assembly to alter OCGA § 42-8-35 yet again regarding probation conditions restricting movement, a reviewing court would have to declare that statutory change constitutionally "reasonable" in light of "evolving standards of decency." This Court declines to engraft onto every statutory change enacted by the General Assembly an interpretation that the legislature is thus making a pronouncement of constitutional magnitude.

Terry also contends that he had been "sent back [from] the halfway house due to the banishment from every county in Georgia except Toombs County . . . ," which implies that the banishment provision interfered with his progress towards rehabilitation. However, the official letter from the Board of Pardons and Paroles states that his tentative parole date is now June 2009, and that the reason a prior tentative date would not be followed was that it "would not be compatible with the welfare of society, see O.C.G.A. 42-9-42 (c)." Accordingly, as Terry has failed to show that the probation condition that he remain in Toombs County is "unreasonable or otherwise fails to bear a logical relationship to the rehabilitative scheme of the sentence pronounced," *Collett*, supra, we find no error in the habeas court's determination that this was a constitutionally proper condi-

tion of probation.[3]

*Judgment affirmed in part, reversed in part, and remanded with direction. All the Justices concur, except Benham, J., who dissents.*

SEARS, Chief Justice, concurring.

The record shows that Terry remains an imminent threat to his former wife and children. It would not be unreasonable for him to remain in prison for the rest of his life. With that said, the court's decision to allow Terry the freedom to enjoy the pleasures of Toombs County is an act of grace and mercy. If for some reason he needs to leave Toombs County, he can do the same thing any inmate would have to do, namely, approach the judge and explain why, given his extreme history of violence, kidnapping, and stalking, he should be allowed to leave the county and the close supervision of local law enforcement.

With these observations, I join the Court's opinion in full.

BENHAM, Justice, dissenting.

I respectfully dissent from Division 3 of the majority opinion because I believe banishing Terry from 158 of 159 counties is unreasonable, not logically related to the rehabilitative scheme of his sentence, and in fact results in de facto banishment from our state which is unconstitutional. Indeed, as soon as Terry steps out of prison, he will instantly be in violation of the terms of his probation as he will not be in Toombs County.[4] Even assuming Terry could comply with the terms of his probation upon his release and travel to Toombs County without setting foot in any other Georgia county, it is still likely that he will be forced to leave the state in lieu of serving his probation in Toombs County because of his lack of ties to the county and limited options to obtain employment, housing, and rehabilitative services. See *"158-County Banishment" in Georgia: Constitutional Implications Under the State Constitution and the Federal Right to Travel*, 36 Ga. Law Rev. 1083 (2002). If he were to depart from the state due to the terms of his banishment, such result would be unconstitutional. Id. at 1103.

Terry resided, committed his crimes, and was arrested in Douglas County. He has no ties whatever to Toombs County which is over 200 miles away from Douglas County. The banishment is unreason-

---

[3] Terry also argues that the probation condition impairs his fundamental right to travel, but this ignores the fact that he is under a criminal sentence and as such his right to travel has already been limited. See *Jones v. Helms*, 452 U. S. 412, 419-421 (101 SC 2434, 69 LE2d 118) (1981).

[4] Terry is currently imprisoned 300 miles away from Toombs County in the Walker State Prison located in Walker County, Georgia.

able and at odds with a logical rehabilitative scheme because, being unable to reside in any other community than Toombs, Terry's options for obtaining a job, housing, and services necessary to aid in his rehabilitation and prevent a recurrence of the circumstances that caused him to enter our penal system are limited. Already Terry has been precluded from participating in a Fulton County work-release program which not only would have served in his rehabilitation but would have provided relief to our taxpayers who would have had one less person to fund in our prison system. Because of the severity of the banishment, there is also no opportunity for authorities to give thought or analysis as to whether Terry could participate in the work-release program in a less restrictive manner, while still limiting any danger to his ex-wife or society at large. There is precedent for constructing a term of banishment that has a rational relationship to the circumstances of the case.[5] See *Hallford v. State*, 289 Ga. App. 350 (2) (657 SE2d 10) (2008) (banishment from judicial circuit plus eight other counties upheld where trial court considered location of victim's residence, employment, and the residences of victim's family members in selecting counties); *United States v. Cothran*, 855 F2d 749 (11th Cir. 1988) (for rehabilitation purposes and the safety of the community, it was reasonable to ban defendant during his two-year probation from Fulton County where he had been subject to bad influences which led him to deal drugs to and exert influence over the community's minors).

A reasonable person in Terry's situation faced with being relegated for ten years to a single county to which he has no ties or access to services and resources would surely be compelled to leave the state.[6] 36 Ga. Law Rev., supra at 1103. Accordingly, I would hold that the 158-county banishment was unreasonable[7] in this case, and that 158-county banishments are illegal per se insofar as they act as

---

[5] In his habeas petition, Terry requested banishment from Douglas County only as a more reasonable term of probation.

[6] Judges and prosecutors, particularly those in more metropolitan areas of the state, know offenders banished to one county will, more often than not, leave the state and that is why they relegate offenders to more rural counties. See Colin Campbell, *Hard to Believe, But Banishment is Legal*, Atlanta J.-Const., October 23, 2003, at F2; Brendan Sager, *Metro's Banished Vanish to Avoid Exile in Rural Echols Restricted to Life Far From City Glitz, Most Flee Georgia*, Atlanta J.-Const., September 30, 2001, at A1; Brendan Sager, *Banished Vanish At Georgia "Gulag" Echols County Prisoners Simply Flee State*, Atlanta J.-Const., September 30, 2001, at C1.

[7] Notably, in 2006, the Georgia legislature passed legislation that probationers may not be banished to an area of the state that encompasses less than a judicial circuit or to an area in which any mandatory service or program is unavailable. OCGA § 42-8-35 (a) (6) (A) and (B). Therefore, the legislature now has formally precluded trial courts from banishing probationers to a single county.

a de facto banishment from this state, thereby violating Georgia's constitution.

DECIDED JUNE 30, 2008.

*McNeill Stokes*, for appellant.

*Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Steven M. Rodham*, for appellee.