## S08A1057. BRADSHAW v. THE STATE.

(671 SE2d 485)

BENHAM, Justice.

Cedric Lavell Bradshaw was found guilty in a bench trial of failing to register as a convicted sex offender in that he had failed to provide his valid current address within 72 hours of changing his address. OCGA § 42-1-12 (f). It being his second violation of the registration law,[1] a mandatory sentence of life imprisonment was imposed. See OCGA § 42-1-12 (n). Prior to his bench trial, appellant filed a motion to dismiss the indictment on the ground that the mandatory sentence of life imprisonment for a second conviction of failing to register constituted cruel and unusual punishment, in violation of the Eighth Amendment to the Constitution of the United States and Article I, Section I, Paragraph XVII of the 1983 Georgia Constitution.[2] Appellant asserts on appeal that the trial court erred when it denied his motion and sentenced him to life imprisonment after having found him guilty.[3]

1. The State presented evidence that appellant had been serving a sentence in the county jail for statutory rape.[4] Within 72 hours of his release, appellant registered as a sex offender with the Bulloch County Sheriff's Department and listed his sister's residence as his residential address. See OCGA § 42-1-12 (f) (2). After investigating the given address, the sheriff's department informed Bradshaw by letter that he could not live at the registered address because that residence was within 1,000 feet of a children's recreation center. OCGA §§ 42-1-12 (a) (3); 42-1-15 (b). Bradshaw then provided his aunt's address as his residence. The sheriff's department told him

---

[1] While there is nothing in the record that reflects that appellant was previously convicted of this offense, all parties maintain that this is appellant's second conviction for violating the sex offender registry law. At oral argument, counsel for the assistant district attorney reported that appellant had been sentenced to time served (approximately six months' imprisonment) for his first violation of OCGA § 42-1-12 (f).

[2] The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Article I, Section I, Paragraph XVII of the Constitution of Georgia provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted; nor shall any person be abused in being arrested, while under arrest, or in prison."

[3] This appeal falls within this Court's exclusive appellate jurisdiction of "[a]ll cases in which the constitutionality of a law . . . has been drawn in question" (1983 Ga. Const. Art. VI, Sec. VI, Par. II (a)), as a result of the trial court's verbal denial, memorialized in a certified transcript of the proceedings, of the motion to dismiss that was based solely on appellant's contention that the statutorily-mandated punishment violated the constitutional ban on cruel and unusual punishment. See *Jenkins v. State*, 284 Ga. 642 (670 SE2d 425) (2008).

[4] On November 30, 2001, two weeks after his 19th birthday, appellant committed the offense of statutory rape. He was sentenced to serve five years and was released after serving four years and ten months.

that address was unacceptable because it was within 1,000 feet of a church. OCGA § 42-1-15 (b). Bradshaw then provided the sheriff's department with a third address. Upon investigation six days later, the sheriff's department determined the address as given did not exist. The investigator found a nearby address which was occupied by a family friend of appellant who said appellant had inquired about living there, but was not residing there. When he could not locate appellant, the investigator contacted appellant's sister, which resulted in appellant's arrival at the jail where he was arrested for failing to abide by the registry law. Appellant testified he had inquired about living with the family friend but had been unable to contact the friend after their initial meeting, so he had stayed with his girlfriend while making efforts to establish contact with the friend. He did not provide the sheriff's department with his girlfriend's address as his residence.

The evidence presented during the bench trial was sufficient for a rational trier of fact to find appellant guilty beyond a reasonable doubt of failure to register as a sex offender. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The issue before us is the constitutionality of the mandatory sentence of life imprisonment which the trial court was required to impose upon appellant after finding him guilty of the offense.[5] The Eighth Amendment to the United States Constitution is applicable to the States through the Fourteenth Amendment (*Robinson v. California*, 370 U. S. 660, 667 (82 SC 1417, 8 LE2d 758) (1962)), and its "protection against excessive or cruel and unusual punishments flows from the basic 'precept of justice that punishment for (a) crime should be graduated and proportioned to (the) offense.' [Cit.]" *Kennedy v. Louisiana*, ___ U. S. ___ (128 SC 2641, 2649, 171 LE2d 525) (2008). The Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U. S. 277, 284 (103 SC 3001,

---

[5] The Georgia General Assembly first enacted a requirement that sex offenders register in 1996; at that time, the first failure to register or the first provision of false information was deemed to be a misdemeanor, with the third and subsequent offenses being felonies punishable by imprisonment of one to three years. Ga. L. 1996, p. 1520, § 1 (OCGA § 42-1-12 (h) (1996)). In 1998, the legislature modified the punishment for the second and subsequent offenses by labeling those offenses as felonies punishable by one to three years' imprisonment or a $100,000 fine, or both. Ga. L. 1998, p. 831, § 1 (OCGA § 42-1-12 (h) (1998)). In 2002, the General Assembly enacted legislation that made a felony of the first failure to register or the first provision of false information, punishable by imprisonment of one to three years, with the second and subsequent offenses still punishable by one to three years' imprisonment or a $100,000 fine, or both. Ga. L. 2002, p. 1400, § 1 (OCGA § 42-1-12 (h) (2002)). In 2006, the General Assembly passed legislation making the first failure to register or the first provision of false information a felony punishable by imprisonment for ten to thirty years, and the second offense punishable by life imprisonment. Ga. L. 2006, p. 379, § 24. OCGA § 42-1-12 (n).

77 LE2d 637) (1983); *Lambeth v. State*, 257 Ga. 15, 16 (354 SE2d 144) (1987) (the concept of "cruel and unusual punishment" embraces arbitrary and disproportionate sentences). The Eighth Amendment "contains a 'narrow proportionality principle' that 'applies to non-capital sentences.' [Cit.]" (*Ewing v. California*, 538 U. S. 11, 20 (123 SC 1179, 155 LE2d 108) (2003) (O'Connor, J., concurring)), and forbids "only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U. S. 957, 1001 (111 SC 2680, 115 LE2d 836) (1991) (Kennedy, J., concurring).[6]

In order to determine whether a sentence set by the legislature is grossly disproportionate, the court initially addresses "the gravity of the offense compared to the harshness of the penalty." *Ewing v. California*, supra, 538 U. S. at 28; *Humphrey v. Wilson*, supra, 282 Ga. at 525. If a threshold inference of gross disproportionality is raised, and it is "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality" (*Harmelin*, supra, 501 U. S. at 1005), the court then determines whether the inference of gross disproportionality is confirmed by a comparison of the defendant's sentence to sentences imposed for other crimes within Georgia and for the same crime in other jurisdictions. Id. The U. S. Supreme Court has observed that there are "some common principles that give content to the uses and limits of proportionality review." *Harmelin*, supra, 501 U. S. at 998 (Kennedy, J., concurring).

> The first principle acknowledges that the fixing of penalties and prison sentences for specific crimes "involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts." [Id.] The second principle recognizes that the Eighth Amendment does not mandate the adoption of any particular penological philosophy [e.g., goals of retribution, deter-

---

[6] The U. S. Supreme Court has recognized that its Eighth Amendment proportionality decisions "have not established a clear or consistent path for courts to follow." *Lockyer v. Andrade*, 538 U. S. 63, 72 (123 SC 1166, 155 LE2d 144) (2003). In *Harmelin*, supra, and *Ewing*, supra, the Court rejected Eighth Amendment challenges to prison sentences without agreeing on a rationale. In each case, two Justices concluded that prison sentences cannot be challenged on proportionality grounds under the Eighth Amendment (*Ewing*, 538 U. S. at 31 (Scalia, J., concurring); id. at 32 (Thomas, J., concurring); *Harmelin*, 501 U. S. at 994 (Scalia, J., joined by Rehnquist, C. J., concurring)). Because Justice Kennedy's opinion in *Harmelin* (joined by O'Connor and Souter, JJ.) and Justice O'Connor's opinion in *Ewing* (joined by Rehnquist, C. J. and Kennedy, J.) reflect the views of the Justices concurring in the judgments on the narrowest grounds, those opinions are the controlling opinions. See *Gregg v. Georgia*, 428 U. S. 153, 169, n.15 (96 SC 2909, 49 LE2d 859) (1976). In *Humphrey v. Wilson*, 282 Ga. 520 (3) (a) (652 SE2d 501) (2007), this Court looked to the opinions of Justice O'Connor in *Ewing* and Justice Kennedy in *Harmelin* for guidance in its analysis.

rence, incapacitation, and rehabilitation] [id., 501 U. S. at 999]. The third principle is an understanding that "marked divergences both in underlying theories of sentences and in the length of prescribed prison terms are the inevitable, often beneficial, result of the federal structure." [Id.] Finally, the fourth principle is a belief that, to the maximum extent possible, proportionality review should be guided by "objective factors," including the framework established in *Solem* [*v. Helm*]. [Id., 501 U. S. at 1000.]

*Crosby v. State*, 824 A2d 894, 905-906 (Del. 2003).

(a) Citing the recognition in *Humphrey v. Wilson*, supra, 282 Ga. at 527, that the most "recent legislative enactments constitute the most objective evidence of a society's evolving standards of decency and how a society views a particular punishment," the State points out that the version of the statute at issue contains the latest legislative view, having been enacted in 2006. In *Humphrey*, this Court described the most recent legislative action, which modified the mandatory sentence imposed on the defendant after the defendant was sentenced, as a legislative determination that the sentence earlier imposed was grossly disproportionate to the crime committed by the defendant. Id. at 528-529. In contrast, in the case at bar, it is the legislature's most recent enactment that stands charged as imposing a sentence that is grossly disproportionate. The suggestion that in all cases the most recent legislative pronouncement on punishment is evidence of an evolving standard of decency that supports a determination that the punishment contained therein is not grossly disproportionate leads to the anomalous result that, as a matter of law, the most recent legislative pronouncement does not impose cruel and unusual punishment. While a statute is presumed constitutional unless it manifestly infringes upon a constitutional provision or violates the rights of the people,

> [t]he mere fact that the Legislature has spoken on the issue of the [sentence to be imposed for a particular crime] does not preclude or in any manner limit this Court's evaluation of the [sentence] to determine whether it comports with the constitutional prohibition against cruel and unusual punishment.

*Dawson v. State*, 274 Ga. 327, 328 (2) (554 SE2d 137) (2001). We reiterate the observation we recently made in *Terry v. Hamrick*, 284 Ga. 24, 28 (663 SE2d 24) (2008), and decline "to engraft onto every statutory change enacted by the General Assembly an interpretation that the legislature is thus making a pronouncement of constitutional magnitude."

(b) With the Supreme Court's principles in mind, we begin our assessment of the gravity of appellant's crime, his failure to give a valid current address within 72 hours of having settled in a new residence. We examine "the harm caused or threatened to the victim or society, and the culpability of the offender[,]" noting that "nonviolent crimes are less serious than crimes marked by violence or the threat of violence." *Solem v. Helm*, supra, 463 U. S. at 292-293. We also take into account "[t]he absolute magnitude of the crime. . . ." Id. at 293. In enacting the 2006 version of the statute that sets out the sexual offender registry, the General Assembly declared that registration of sexual offenders was necessary to protect the public, described the sexual offender registry as a "requirement that complete and accurate information be maintained and accessible for use by law enforcement authorities, communities, and the public[,]" and observed that "[t]he designation of a person as a sexual offender . . . [is] simply a regulatory mechanism and status resulting from the conviction of certain crimes." Ga. L. 2006, p. 379, § 1. The failure to update information on the sexual offender registry, itself involving "neither violence nor threat of violence to any person[,]" is a "passive felony" (*Solem v. Helm*, supra, 463 U. S. at 296) that neither caused nor threatened to cause harm to society. The facts of appellant's case accentuate the passivity of his failure to register his current address inasmuch as his failure was preceded by his registration of two addresses of relatives that were rejected by the sheriff's department as being in violation of the distance requirements of the sex offender registry law, and by appellant's voluntary appearance at the jail within 24 hours of an investigator having informed appellant's sister (the occupant of his first rejected registered address) that he needed to get in touch with appellant. Thus, despite appellant's failure to register his current address, he was readily accessible to police upon their visit to the address where he initially planned to live upon his release from jail.

(c) In examining the sentence imposed on appellant, we note that a sentence of life imprisonment is the third most severe penalty permitted by law, exceeded in severity only by capital punishment and life imprisonment without the possibility of parole. Life imprisonment is the most severe sentence that can be imposed for a crime that does not involve murder or recidivist punishment for a serious violent felony.[7] See OCGA § 17-10-7 (b). The State maintains we should treat appellant's sentence of life imprisonment as one for a

---

[7] A "serious violent felony" is statutorily defined as malice and felony murder, armed robbery, kidnapping, rape, aggravated child molestation (excluding the "Romeo and Juliet" exception of OCGA § 16-6-4 (d) (2)); aggravated sodomy and aggravated sexual battery. OCGA § 17-10-6.1 (a) (1)-(7).

term of seven years since appellant would be eligible for consideration for release on parole after having served seven years of his life sentence. See OCGA § 42-9-45 (b), (f). We disagree. In Georgia, it is the Board of Pardons and Paroles that is constitutionally vested with the power to grant parole, and the power to make parole decisions is discretionary. *Daker v. Ray*, 275 Ga. 205 (2) (563 SE2d 429) (2002). While the General Assembly has required the Board to establish and use a parole guidelines system (OCGA §§ 42-9-40 (a); 42-9-42 (c)),

> nothing in the applicable statutes mandates that the guidelines control the final parole decision.... [T]he ultimate grant or denial of parole to a prisoner who is eligible under the guidelines remains a discretionary matter for the Board ... in that the Board expressly reserved its discretion to deviate from the recommended parole date derived therefrom.

Id. Thus, appellant's "inability to enforce any 'right' to parole precludes us from treating his life sentence as if it were equivalent to a sentence of [seven] years." *Rummel v. Estelle*, 445 U. S. 263, 280 (100 SC 1133, 63 LE2d 382) (1980).[8]

Based on the foregoing factors, we conclude that the threshold inference of gross disproportionality is raised by the imposition of a mandatory sentence of life imprisonment for appellant's second failure to amend his sex offender registration by providing his valid current address to the sheriff's department. Consequently, we next determine whether the inference of gross disproportionality is confirmed by a comparison of the defendant's sentence to sentences imposed for other crimes within Georgia (intra-jurisdictional proportionality analysis) and for the same crime in other jurisdictions (inter-jurisdictional proportionality analysis). See *Harmelin v. Michigan*, supra, 501 U. S. at 1004-1005.

3. A guilty defendant in Georgia must be sentenced to life imprisonment only in a narrow set of circumstances. A mandatory life sentence is the minimum sentence that may be imposed for the crimes of murder (OCGA § 16-5-1 (d)) and feticide (OCGA § 16-5-80

---

[8] In *Rummel*, the Court, addressing Rummel's "complex matrix" in which he compared his sentence to that imposed by other states in support of his proportionality argument, acknowledged Texas's "relatively liberal policy of granting 'good time' credits to its prisoners, a policy that historically has allowed a prisoner serving a life sentence to become eligible for parole in as little as 12 years." Nonetheless, the Court rejected the idea that eligibility for parole was the sentence to be considered in analyzing whether a sentence was cruel and unusual. As is evidenced in *Daker*, the Georgia policy of parole cannot be described as being as predictable as the Texas parole system in play nearly 30 years ago, or as generous. Of note is the fact that Bradshaw served 58 months of his 60-month sentence for the underlying statutory rape conviction.

(c)). Life imprisonment is the only punishment available for the crimes of hijacking an aircraft (OCGA § 16-5-44 (c)) and kidnapping for ransom or kidnapping with bodily injury not resulting in death. OCGA § 16-5-40 (b) (3), (4). A sentence of life imprisonment is mandated for lesser crimes when the defendant is sentenced as a recidivist after having committed a serious violent felony (see fn. 7, supra) or hijacking a motor vehicle (OCGA § 16-5-44.1), for being convicted for the second time of possessing or using certain firearms during the attempt to commit or the commission of certain crimes, or for wearing a bullet-proof vest during the attempt to commit or the commission of certain crimes. OCGA § 16-11-180 (c). All of these crimes are violent, more disruptive of society, and require manifestly more culpability of a defendant than the failure of a registered sex offender to make authorities aware of a recent change in address. Likewise, more violent crimes than the failure to register result in lesser punishment than life imprisonment. A person who commits voluntary manslaughter (OCGA § 16-5-2 (b)); aggravated assault with intent to murder, rape, or rob (OCGA § 16-5-21 (b)); or aggravated battery (OCGA § 16-5-24 (b)) may receive a sentence of as little as one year, and one who is convicted of attempting to commit a violent injury on another receives misdemeanor punishment. OCGA § 16-5-20. "The fact that these more culpable offenders may receive a significantly smaller or similar sentence buttresses our initial judgment that [appellant's] sentence is grossly disproportionate to his crime." *Humphrey v. Wilson,* supra, 282 Ga. at 531. The intra-jurisdictional proportionality analysis confirms the inference of disproportionality.

4. Finally, we turn to the inter-jurisdictional proportionality analysis in which we compare appellant's sentence of life imprisonment to sentences imposed in other states for the same conduct. *Harmelin v. Michigan,* supra, 501 U. S. at 1005.

Every state has enacted a statute punishing the failure to register as a sex offender, but no state other than Georgia imposes a punishment of life imprisonment for a second infraction. Twenty-four states (including Georgia) have statutes that specify punishment for a second conviction for failing to register or maintain one's sex offender registration. Of the other 23 states, one authorizes maximum punishment of imprisonment for less than a year for the second offense (Tennessee: 180 days); one authorizes a maximum sentence of one year imprisonment (South Carolina); another authorizes a maximum sentence of less than two years (Ohio: 6-18 months); 11 states provide maximum punishment of up to five years' imprisonment (New Mexico (3 years); Virginia and West Virginia (1-5 years); Minnesota (2-5 years); Missouri (up to 4 years); Maine (3-5 years); Iowa, Maryland, Massachusetts, South Dakota, Vermont

(up to 5 years)); six states provide maximum punishment of between 5 and 10 years' imprisonment for the second offense (Illinois (3-7 years); Indiana (2-8 years); Kentucky (5-10 years); Michigan (up to 7 years); Texas (2-10 years); Wyoming (up to 10 years)); two states authorize maximum punishment in excess of 10 years' imprisonment (Louisiana (5-20 years); Nebraska (1-20 years)), and New Hampshire authorizes a *minimum* sentence of seven years. Of the 25 states that provide a single penalty regardless of the number of previous convictions for failure to register, the maximum punishment is less than a year in Alaska and Wisconsin; the maximum penalty is between one and five years in 15 states (Arizona (6-18 months); Delaware (up to 2 years); California (up to 3 years); Colorado (1-3 years); North Dakota (90 days - 5 years); Connecticut and Kansas (1-5 years); New Jersey (3-5 years); and Florida, Hawaii, Mississippi, Montana, Oklahoma, Ohio, Washington (up to 5 years)). Seven states provide for a maximum punishment of between five and ten years' imprisonment (Alabama (1 yr., 1 day - 10 years); Arkansas (3-10 years); Nevada (1-6 years); New York (up to 7 years); Idaho, Pennsylvania, Rhode Island (up to 10 years). Utah authorizes a *minimum* sentence of 90 days.[9]

Based on this review, Georgia's mandatory punishment of life imprisonment is the clear outlier, providing the harshest penalty and providing no sentencing discretion. This gross disparity between Georgia's sentencing scheme and those of the other states reinforces

---

[9] Ala. Code §§ 13A-11-200 (c), 13A-5-6 (a) (3); Alaska Stat. §§ 11.56.835 (d), 12.55.035 (b) (4); Ariz. Rev. Stat. §§ 13-3824, 13-702 (A) (5); Ark. Code. Ann. §§ 12-12-906 (f) (3), 5-4-401 (a) (4); Cal. Penal Code § 290.018 (b); Col. Rev. Stat. Ann. §§ 18-3-412.5 (2) (a), 18-1.3-401 (1) (a) (V) (A); Conn. Gen. Stat. §§ 54-251 (e), 53a-35a; 11 Del. Code Ann. §§ 4120 (k), 4205; Fla. Stat. Ann. §§ 943.0435, 775.082 (4) (b), (d); Haw. Rev. Stat. §§ 846E-9 (d), 706-660; Idaho Code § 18-8311 (1); Ill. Comp. State Ann. § 730/150.10 (a); Ind. Code. Ann. §§ 11-8-8-17 (b), 35-50-2-6 (a); Iowa Code Ann. §§ 692A.7 (1), 902.9 (5); Kan. Stat. Ann. §§ 2-4903 (a), 21-4501 (e); Ky. Rev. Stat. §§ 17.510 (11), 17.532.020; La. Rev. Stat. Ann. § 15:542.1.4 (A) (2); Me. Rev. Stat. Ann. Title 34-A § 11227, Title 17-A, § 4-A (2) (B); Md. Code Ann., Crim. Proc. § 11-721 (b) (2); Mass. Gen. Laws Ann. 6 § 178H (a) (2); Mich. Comp. Laws Ann. § 28.729 (1) (c); Minn. Stat. Ann. § 243.166, subd. 5 (c); Miss. Code Ann. § 45-33-33 (2); Mo. Ann. Stat. §§ 589.425 (1), 558.011 (1) (4); Mont. Code Ann. § 46-23-507; Neb. Rev. Stat. §§ 29-4011, 28-105; Nev. Rev. Stat. § 213.1243 (8); N.H. Rev. Stat. §§ 651-B:9, 625.9 (III) (a) (1); N.J. Stat. Ann. §§ 2C:7-2 (e), 2C:43-6 (a) (3); N. M. Stat. Ann. §§ 29-11A-4 (N) (1987), 31-18-15 (A) (9) (1978); N.Y. Correct. Law § 168-t, N.Y. Penal Code § 70.00 (2) (d); N.D. Cent. Code §§ 12.1-32-15 (9), 12.1-32-01 (4); Ohio Rev. Code Ann. §§ 2950.99, 2929.14 (A) (4); 57 Okla. Stat. Ann. § 587 (A); Or. Rev. Stat. §§ 181.599 (3), 161.605 (3); 18 Pa. Cons. Stat. Ann. §§ 4915 (b) (3), 1103 (2); R.I. Gen. Laws § 11-37.1-10 (a); S.C. Code Ann. § 23-3-470 (B) (2); S.D. Codif. Laws §§ 22-24B-12.1, 22-6-1 (8); Tenn. Code Ann. § 40-39-208 (d); Vernon's Ann. Tex. Code Crim. Pro. Art. 62.102 (b), Vernon's Ann. Tex. Penal Code § 12.34 (b) (2); Utah Code Ann. § 77-27-21.5 (14) (a) (i); Vt. Stat. Ann. § 5409 (a) (2); Va. Code Ann. §§ 18.2-472.1 (A), 18.2.10 (f); Wash. Rev. Code Ann. §§ 9A.44.130 (11), 9A.20.021 (c); W. Va. Code § 15-12-8 (b); Wis. Stat. Ann. § 301.45 (6) (a) (2); Wyo. Stat. Ann. § 7-19-307 (d) (1977). Because of the number of variable factors involved, North Carolina's sentence was not considered. N.C. Gen. Stat. Ann. §§ 14-208.11 (a) (2), 15A-1340.17.

the inference that the appellant's crime and sentence are grossly disproportionate.

We conclude that the imposition of a sentence of life imprisonment is so harsh in comparison to the crime for which it was imposed that it is unconstitutional.[10] However, the unconstitutionality of the sentence does not require the trial court to dismiss the indictment charging appellant with failure to register as a sex offender. Consequently, the judgment of conviction is affirmed and the case is remanded to the trial court with direction to vacate the sentence of life imprisonment and resentence appellant.

*Judgment affirmed, sentence vacated, and case remanded with direction. All the Justices concur, except Carley, J., who concurs in part and dissents in part.*

SEARS, Chief Justice, concurring.

Life in prison is a severe punishment that should be reserved for society's most serious criminal offenders. Some people even believe that rotting in prison for life is more torturous and inhumane than a quick and instantaneous death. Be that as it may, Bradshaw's failure to register as a sex offender, when his underlying crime only landed him in jail for five years, is not the kind of crime a civilized society ought to require him to pay for with his life.

CARLEY, Justice, concurring in part and dissenting in part.

I fully concur in Division 1 and in the affirmance of the judgment of conviction for failure to register as a sex offender. In Division 2, however, the majority rejects the clearest and most objective evidence under our Eighth Amendment precedent, simplistically minimizes the gravity of Bradshaw's crime by denominating it as a passive, nonviolent felony, erroneously maximizes the harshness of the penalty by treating his eligibility for parole as insignificant, and disregards the evolving consensus with respect to that crime both within and outside Georgia. Therefore, adherence to the doctrine of stare decisis, the rules of statutory construction, and the principle of separation of powers compels me to dissent to today's monumental abuse of this Court's authority to determine the constitutionality of legislation.

1. Based upon precedent of the Supreme Court of the United States, this Court has repeatedly "[r]ecogniz[ed] that recent legisla-

---

[10] The Georgia Constitution provides a more extensive guarantee against cruel and unusual punishment than does the Eighth Amendment to the U. S. Constitution. See *Fleming v. Zant*, 259 Ga. 687, 690 (386 SE2d 339) (1989). Because we have decided this case based on the Eighth Amendment and ruled in favor of appellant, there is no need to address appellant's contention based on Art. I, Sec. I, Par. XVII of the Georgia Constitution.

tive enactments constitute the most objective evidence of a society's evolving standards of decency and of how a society views a particular punishment . . . ." *Humphrey v. Wilson,* 282 Ga. 520, 527 (3) (c) (652 SE2d 501) (2007). See also *Johnson v. State,* 276 Ga. 57, 62 (5) (573 SE2d 362) (2002) ("the clearest and most objective evidence of how contemporary society views a particular punishment"); *Fleming v. Zant,* 259 Ga. 687, 689 (3) (386 SE2d 339) (1989). In Division 2 (a), however, the majority rejects the applicability of this principle because, "in the case at bar, it is the legislature's most recent enactment that stands charged as imposing a sentence that is grossly disproportionate." (Maj. op. p. 678.) In support of its analysis, the majority cites two cases, one of which is entirely inapplicable and the other of which actually contradicts the majority opinion. *Terry v. Hamrick,* 284 Ga. 24, 28 (3) (663 SE2d 256) (2008) did not involve a claim of cruel and unusual punishment. That case actually held that applying *Humphrey* in the different context of determining whether banishment was constitutionally unreasonable would lead to anomalous results. *Dawson v. State,* 274 Ga. 327, 330 (3) (554 SE2d 137) (2001) heavily relied on the most recent amendment to the statutory method of execution because it represented " 'the clearest and most objective evidence of how contemporary society views a particular punishment' inasmuch as that significant change in the law 'amount(s) to evidence of the shifting or evolution of the societal consensus.' [Cit.]"

Under the majority's erroneous and wholly unsupported analysis, a societal consensus as expressed in the most recent legislative amendment is apparently relevant only in invalidating a penalty and not in upholding it. To the contrary, even if a societal consensus opposes a particular sentence at some time, that "does not mean that such consensus may not [again] change thus altering what comes within the meaning of cruel and unusual punishment." *Fleming v. Zant,* supra at 690 (3). Therefore, the most recent statutory sentencing provision constitutes the clearest and most objective evidence of how society views a punishment which was nonexistent or less severe in the past.

In this case, the 2006 amendment to OCGA § 42-1-12 (n), especially when considered in the context of its initial codification and the ensuing increases in the penalty for failure to register as a sex offender, which are set forth in footnote 5 of the majority opinion, is the clearest and most objective evidence that society's view of that punishment has shifted, such that life imprisonment for a second conviction is now viewed as a necessary and appropriate punishment for failure to register as a sex offender.

2. In Division 2 (b), the majority, citing *Solem v. Helm,* 463 U. S. 277, 292-293, 296 (103 SC 3001, 77 LE2d 637) (1983), discounts the

felony of failure to register as a sex offender as being nonviolent and passive. However, the crime at issue in *Solem* was uttering a no account check, which "was ' "one of the most passive felonies a person could commit." ' [Cit.] It 'involved neither violence nor threat of violence to any person,' and was 'viewed by society as among the less serious offenses.' [Cit.]" *Harmelin v. Michigan*, 501 U. S. 957, 1002 (II) (A) (111 SC 2680, 115 LE2d 836) (1991) (Kennedy, J., concurring). The majority also selectively quotes from the General Assembly's findings in 2006, omitting those findings which show that the suggestion that the felony here was merely "nonviolent and victimless . . . is false to the point of absurdity. To the contrary, [Bradshaw's] crime threatened to cause grave harm to society." *Harmelin v. Michigan*, supra. The legislative findings which are relevant to this case read as follows:

> The General Assembly finds and declares that recidivist sexual offenders . . . and sexual offenders who prey on children are sexual predators who present an extreme threat to the public safety. Many sexual offenders are extremely likely to use physical violence and to repeat their offenses; and some sexual offenders commit many offenses, have many more victims than are ever reported, and are prosecuted for only a fraction of their crimes. The General Assembly finds that this makes the cost of sexual offender victimization to society at large, while incalculable, clearly exorbitant. The General Assembly further finds that the high level of threat that a sexual predator presents to the public safety, and the long-term effects suffered by victims of sex offenses, provide the state with sufficient justification to implement a strategy that includes: . . . [r]equiring the registration of sexual offenders, with a requirement that complete and accurate information be maintained and accessible for use by law enforcement authorities, communities, and the public; [and] [p]roviding for community and public notification concerning the presence of sexual offenders . . . . The General Assembly further finds that the state has a compelling interest in protecting the public from sexual offenders and in protecting children from predatory sexual activity, and there is sufficient justification for requiring sexual offenders to register and for requiring community and public notification of the presence of sexual offenders. The General Assembly declares that in order to protect the public, it is necessary that the sexual offenders be registered and that members of the community and the public be notified of a sexual offender's presence.

Ga. L. 2006, pp. 379, 381, § 1. This state

> could conclude that a conviction for a sex offense provides evidence of substantial risk of recidivism. The legislature's findings are consistent with grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class. The risk of recidivism posed by sex offenders is "frightening and high." [Cits.]

*Smith v. Doe*, 538 U. S. 84, 103 (II) (B) (123 SC 1140, 155 LE2d 164) (2003). Accordingly, the General Assembly clearly was authorized to conclude that a sexual offender's failure to register is an extremely serious crime which thwarts its statutory strategy for protecting the public from the high risk of repeated sexual offenses. As even the majority acknowledges, substantive penological judgments are " 'properly within the province of legislatures, not courts[,]' " and a state legislature is entitled to accord great weight to the penological goal of deterrence and to utilize a theory of mandatory sentencing. *Harmelin v. Michigan*, supra at 998-999 (I) (B), 1006 (II) (B).

3. In Division 2 (c), the majority quotes *Rummel v. Estelle*, 445 U. S. 263, 280 (II) (100 SC 1133, 63 LE2d 382) (1980) for the proposition that Bradshaw's " 'inability to enforce any "right" to parole precludes us from treating his life sentence as if it were equivalent to a sentence of (seven) years.' [Cit.]" (Maj. op. p. 680.) While that is true enough, immediately after this quoted language, the Supreme Court of the United States stated the following:

> Nevertheless, because parole is "an established variation on imprisonment of convicted criminals," [cit.], a proper assessment of [the] treatment of [the defendant] could hardly ignore the possibility that he will not actually be imprisoned for the rest of his life.

*Rummel v. Estelle*, supra at 280-281 (II). Although parole is a discretionary matter for the Board of Pardons and Paroles, "the General Assembly has required the Board to establish and use a parole guidelines system. [Cit.]" *Daker v. Ray*, 275 Ga. 205, 206 (2) (563 SE2d 429) (2002). "Thus it is possible to predict, at least to some extent, when parole might be granted." *Solem v. Helm*, supra at 301 (IV) (B). Unlike pardon and commutation, which are given little weight in *Solem*, parole "is an important consideration in determining the actual prison time to be served under any sentence which is parole eligible." *State v. Griffin*, 744 P2d 10, 12 (II) (Ariz. 1987) (In Banc). See also *Williams v. State*, 539 A2d 164, 172 (Del. 1988). Bradshaw's sentence must be regarded as far "less severe

than the one invalidated in *Solem*, in which the petitioner had been sentenced to life imprisonment without the possibility of parole. [Cit.]" *Taylor v. Lewis*, 460 F3d 1093, 1098 (II) (B) (1) (9th Cir. 2006) (where defendant was eligible for parole after 25 years). Because Bradshaw will be eligible for parole in only seven years under OCGA § 42-9-45 (b), his sentence is also considerably less severe than the sentence of life imprisonment upheld in *Rummel v. Estelle*, supra, where the petitioner was eligible for parole in 12 years. Compare *Taylor v. Lewis*, supra.

Accordingly, in light of the gravity of Bradshaw's offense and his eligibility for parole in seven years, this surely is not "the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Harmelin v. Michigan*, supra at 1005 (II) (A). Therefore, the intra-jurisdictional and inter-jurisdictional proportionality analyses set forth in the majority opinion are completely unnecessary. *Harmelin v. Michigan*, supra.

4. Even assuming that an inference of gross disproportionality has been raised, the majority's comparison of Bradshaw's sentence with those imposed for other crimes in Georgia and for the same crime outside the state do not in any way confirm that inference. In Division 3 of its opinion, the majority errs, in a manner similar to Division 2 (b), by assuming that violent criminals in Georgia are necessarily more culpable than sex offenders who fail to register. As discussed above, however, the legislature was authorized to conclude that such failure to register increases the extremely high and grave risk of repeated sexual offenses against members of the public, which commonly involve violence or the threat of violence.

Moreover, the Supreme Court of the United States has observed that "the presence or absence of violence does not always affect the strength of society's interest in deterring a particular crime or in punishing a particular criminal." *Rummel v. Estelle*, supra at 275 (II). Other crimes in this state, "of course, implicate other societal interests, making any such comparison inherently speculative." *Rummel v. Estelle*, supra at 282 (II), fn. 27. Many offenses in Georgia can hardly be termed "violent," "and yet each can be viewed as an assault on a unique set of societal values as defined by the political process." *Rummel v. Estelle*, supra. Such offenses include, for example, a variety of crimes which relate to property or, similar to the crime here, impede the administration of justice in some way. Many of those nonviolent offenses have statutory punishments which are equal to or greater than some of the violent crimes listed by the majority. See OCGA §§ 16-8-12 (penalties for theft), 16-9-1 (b) (first degree forgery), 16-9-2 (b) (second degree forgery), 16-10-50 (b) (hindering apprehension or punishment of criminal), 16-10-52 (b)

(escape), 16-10-53 (a) (aiding escape), 16-10-90 (b) (compounding a felony), 16-10-94 (c) (tampering with evidence of a felony), 42-1-15 (h) (2) (sex offender's failure to comply with residence, employment, or loitering restrictions). The notions embodied in the majority opinion "that if the crime involved 'violence,' [cit.], a more severe penalty is warranted under objective standards simply will not wash, whether it be taken as a matter of morals, history, or law." *Rummel v. Estelle*, supra.

Accordingly, the majority's intra-jurisdictional proportionality review fails to confirm any inference of gross disproportionality.

5. In the inter-jurisdictional proportionality analysis in Division 4 of its opinion, the majority merely recites the penalties in other states without considering any of the recognized variables which complicate that analysis, including parole eligibility, as discussed above, and the role of prosecutorial discretion with respect to recidivist provisions. *Rummel v. Estelle*, supra at 280-281 (II).

Another factor undermining the majority's analysis is the nationwide trend of increasing the penalties for failure to register as a sex offender. In 2006, Congress increased the federal punishment for failure to register as a sex offender to a single maximum penalty of ten years' imprisonment. 42 USC § 2250 (a); *United States v. Gill*, 520 FSupp.2d 1341, 1343 (D. Utah 2007). Congress also required states to establish a maximum term of imprisonment that is greater than one year for a sex offender's failure to comply with registration requirements. 42 USC § 16913 (e); *United States v. Senogles*, 570 FSupp.2d 1134, 1149 (III) (A) (2) (D. Minn. 2008). Thus, all of those states cited by the majority with maximum penalties of one year or less will presumably amend their statutes to increase those penalties in conformity with federal law.

Furthermore, I have not located any instance of a decreased punishment, and many, if not most, states have at some point increased the sentences for failure to register as a sex offender. *State v. Cook*, 187 P3d 1283, 1286 (Kan. 2008); *In re Derrick B.*, 139 P3d 485, 491 (II) (Cal. 2006); *Peterson v. Shake*, 120 SW3d 707, 708 (Ky. 2003); Gary L. Miller & Joel M. Schumm, *Recent Developments in Indiana Criminal Law and Procedure*, 30 Ind. L. Rev. 1005, 1008 (I) (D) (1997); Jessica R. Ball, *Public Disclosure of "America's Secret Shame:" Child Sex Offender Community Notification Law in Illinois*, 27 Loy. U. Chi. L.J. 401, 425 (III) (A) (1996). Given the clear national trend,

> [e]ven were we to assume that the statute employed against [Bradshaw] was the most stringent found in the 50 States, that severity hardly would render [his] punishment "grossly disproportionate" to his offenses or to the punish-

ment he would have received in the other States. . . . Absent a constitutionally imposed uniformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State.

*Rummel v. Estelle*, supra at 281-282 (II). Thus, the majority's inference of gross disproportionality is not reinforced by its inter-jurisdictional proportionality review.

In just one year, the majority has departed from the analytical framework of *Humphrey v. Wilson*, including its emphasis on utilizing the clearest and most objective evidence of how society views a particular punishment. In *Humphrey*, supra at 532 (3) (g), this Court joined the Supreme Court of the United States in "emphasiz[ing] that it is the 'rare case( )' in which the threshold inference of gross disproportionality will be met and a rarer case still in which that threshold inference stands after further scrutiny. [Cit.]" Indeed, outside the context of capital punishment and extreme cases such as punishment of overtime parking by life imprisonment, successful challenges to the proportionality of legislatively mandated terms of imprisonment should be "exceedingly rare." *Ewing v. California*, 538 U. S. 11, 21-22 (II) (A) (123 SC 1179, 155 LE2d 108) (2003). "[T]he issue of punishment is generally one for the legislative branch, and legislative discretion is deferred to unless the sentence imposed shocks the conscience. [Cit.]" *Johnson v. State*, supra. Because the case before us is not one of those exceedingly rare cases that shocks the conscience, I strongly dissent to that portion of the judgment which vacates the authorized sentence of Bradshaw and remands this case for re-sentencing.

DECIDED NOVEMBER 25, 2008.

*Robert L. Persse*, for appellant.
*Richard A. Mallard, District Attorney, W. Scott Brannen, Assistant District Attorney*, for appellee.